# CAROLINE HADAWAY *vs.* RICHARD D. HYNSON, CAROLINE L. HYNSON, Executors of RICHARD HYNSON.

*Proof of Ancient Indebtedness—Stale Claims—Laches in Prosecution of Suit—What Questions May be Determined Upon Distribution of Proceeds of Mortgage Sale—Release of Surety—Powers of Trustee—Effect of Scire Facias Reviving Judgment—Estoppel.*

A fund arising from a sale under a mortgage to a trustee was in Court for distribution many years after the sale and after the death of the trustee, and also of one of the parties who would be entitled to the surplus after payment of balance due on a judgment for which the mortgagors were liable. The controversy related to the amounts with which the deceased trustee should be charged as having been received by him from various sources and properly applicable to the payment of the distributees' indebtedness. Appellant, who would be entitled to such surplus, produced before the auditor a number of receipts and statements of accounts in the handwriting of the deceased trustee, found among the papers of appellant's father, under whom she claimed. *Held,* that although these papers standing alone would create a *prima facia* presumption of indebtedness on the part of the trustee, yet this presumption is overcome by the fact that they are produced twenty-five years after the transactions to which they relate, by persons having no personal knowledge of their contents, and after the death of both parties to the transactions, and also because they are contradicted by other papers showing that the amounts claimed to have been collected by the trustee were by him paid to the executor of appellant's father.

Where a party does not make a claim that a trustee is indebted to her father's estate until fifteen years after the latter's death, and then abandons a petition in which the claim is set up, and does not again assert it until after the trustee's death, who, when living, had denied it under oath, there is such laches as requires the Court to deal strictly with the evidence produced subsequently in support of such claim.

Laches in the prosecution of a suit is as fatal to recovery as delay in its institution.

When a fund arising from a mortgage sale is in Court for distribution, the Court has no authority to decide questions not relating to the mortgage debt, and not arising betweeen the parties to the mortgage or their assignees, Therefore, if an executor is entitled to part of

such fund, a distributee of the estate in which he is executor has no right to demand payment to himself. Nor can the Court in such case determine the question of the existence of an indebtedness of the executor of the mortgagee to the executor of the mortgagor growing out of transactions having no relation to the mortgage. And an agreement of the parties that such questions should be determined does not confer jurisdiction upon the Court.

When a trustee executes an unauthorized release of part of the land from a mortgage indebtedness for which a surety is liable on a bond, the surety is not thereby discharged, because such attempted release is *ultra vires* and invalid. And even if the surety would have been entitled to rely on this defence his executor cannot do so when a judgment for the indebtedness was, after the release, revived against the executor by *scire facias*.

When a *scire facias* is issued against an original defendant or his administrator, to revive a judgment, and he is summoned, a judgment of *fiat* operates as a conclusive estoppel preventing him from asserting any defence to the original judgment which he neglected to plead to the *scire facias*.

A defendant in a *scire facias* is entitled to plead any defence which goes to show that his liability has been extinguished.

Appeal from an order of the Circuit Court for Kent County (WICKES, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, ROBERTS and SCHMUCKER, JJ.

*James P. Gorter* (with whom was *Hope H. Barroll* on the brief), for the appellant.

*Harrison W. Vickers* (with whom was *Richard D. Hynson* on the brief), for the appellees.

SCHMUCKER, J., delivered the opinion of the Court.

Richard Hynson, as trustee under a decree in equity of the Circuit Court for Kent County, sold to David R. Derrickson on November 19th, 1867, a farm known as the "Shipyard Farm," for $20,111.49. Derrickson paid $3,111.49 of the purchase money in cash, and for the remaining $17,000, gave to the trustee his bonds with John P. Smith and Abel J. Rees as sureties. He paid no more

of the purchase money, and Hynson brought suit on the bond and recovered judgment on January 18th, 1869, against Derrickson and the sureties, for the penalty of the bond, to be released on payment of $9,044, the amount then due of the purchase money.

Hynson also applied for an order to re-sell the "Shipyard Farm," and Derrickson, Smith and Rees all answered the application, admitting the default and consenting to the order of re-sale, which was thereupon passed. At the re-sale, on June 21st, 1870, John P. Smith purchased the farm for $15,422.68, but he died before the sale had been reported to Court. Subsequently, with the consent of all the other heirs of Smith, a sale to two of his children, Edwin Smith, and the appellant, Caroline Hadaway, was reported at the same price, $15,422.68, with interest from June 21st, 1870, the date at which the sale had been originally made to their father. The sale, as thus reported, was finally ratified in due course.

After the death of John P. Smith, Hynson, as trustee, had the judgment on the bond revived by *scire facias* against Edwin Smith, his executor, the judgment being entered under the *sci. fa.* on October 25th, 1871, for the penalty of the bond, to be released on payment of $20,895.83.

The real estate of John P. Smith, which he had devised to his children was, of course, liable to be sold for the payment of this judgment, and in order to prevent such a sale, as well as to provide money to pay for the "Shipyard Farm," the appellant and the other children of Smith, on October 1st, 1872, executed three mortgages to Hynson on the "Shipyard Farm," and certain of the lands which had been devised to them by their father. These mortgages set forth that they were executed to secure the payment of existing indebtedness from the mortgagors to Hynson, to the respective amounts of $10,000, $5,000 and $3,500, making in all $18,500.

The aggregate amount of these mortgages was less by several thousand dollars than the balance, at the time due

on the *sci. fa.* judgment, but it was known to all parties to
the transaction that Hynson then had in his hands as
Smith's attorney, certain cash and also some claims for col-
lection, which, when collected, would, if retained by him
and applied on account of the judgment, about make up
the difference between the gross amount of the mortgages
and the balance due on the judgment.    There does not,
however, appear to have been any definite agreement or
understanding requiring Hynson to retain this money and
the proceeds of the collections and apply them to the judg-
ment, and he seems to have subsequently accounted for
them to Smith's executor.

The $5,000 mortgage was assigned by Hynson to George
B. Westcott, who afterwards sold the "Shipyard Farm"
under the mortgage for $7,500, and after paying therefrom
the amount due him and costs of sale, he turned over, under
an order of Court, to Hynson, trustee, on November 10th,
1884, the balance, amounting to $1,718.12.    This transac-
tion resulted in a credit on the judgment of $5,000,
$1,718.12—$6,718.12.

The other two mortgages, for $10,000 and $3,500, were
assigned to the Misses Hurlock, and by them re-assigned
to Hynson, who, in exercise of the powers of sale therein
contained, sold the mortgaged real estate for $14,048.26
on June 20th, 1876.    He reported his sales to the Circuit
Court for ratification, and thus instituted the proceedings in
which, after the lapse of twenty-two years, the Circuit
Court, on Oct. 21st, 1898, passed the order ratifying the
auditor's account distributing the proceeds of sale.    From
that order the present appeal was taken.

Exceptions having been filed to the ratification of the
mortgage sales so reported by Hynson, the Circuit Court
on January 21st, 1878, filed an opinion stating that an order
would be signed setting the sales aside, but the record con-
tains no such order, and the purchasers remained in posses-
sion of the lands sold.

On June 7th, 1887, the appellant filed in the mortgage

proceeding a petition alleging, among other things, that Hynson, as the attorney of her father, John P. Smith, had in his hands, at the death of the latter, large sums of money which, together with the sums paid by Derrickson and the proceeds of the re-sale of the Shipyard Farm, would have fully satisfied the indebtedness for which the *sci. fa.* judgment was rendered and should have been applied to the payment thereof, and that therefore nothing was due under the mortgages at the time of the sale. The petition prayed that the mortgage sales made by Hynson might be set aside and he be required to account, under oath, for all of the moneys which had been so received by him. On Oct. 1st, 1888, the appellant filed an order dismissing her petition.

Hynson, in apparent ignorance of the dismissal of the appellant's petition, filed a full answer to it under oath on Oct. 12th, 1888, in which he denied that he had retained any moneys which came to his hands as attorney for John P. Smith, and averred that he had fully accounted for and paid all such money, amounting to over $4,000, to Edwin Smith, the executor of John P. Smith, and that he had subsequently been paid by said executor the sum of $3,268.59 on account of the *sci. fa.* judgment. This answer was accompanied by an account setting forth in detail the transactions of Hynson in reference to the funds in question. The administration accounts of Edwin Smith, executor, appear in the record and they practically substantiate the averments of Hynson's answer, so far as they relate to transactions with him.

Edwin Smith died about 1875, and on April 27th, 1875, Richard Hynson was made administrator of his estate and also administrator *d. b. n. c. t. a.* of the estate of his father, John P. Smith. Richard Hynson died about 1892, and on April 21st, 1892, Caroline L. and Richard D. Hynson, his executors, were made parties to the mortgage proceedings.

On April 2nd, 1892, after the death of Richard Hynson, the mortgage sale remaining in *statu quo* with the purchasers

in possession and the sale still unratified, the appellant, having first obtained leave of the Court, filed a new petition in the mortgage proceeding reiterating in substance the allegations of the petition which she had dismissed nearly five years before..

On July 5th, 1896, the mortgage sales made by Hynson, on June 20th, 1876, were finally ratified by consent of all parties interested.   After the ratification the following agreement, bearing date July 31st, 1894, was filed in the mortgage case : " This agreement, made this 31st day of July, 1894, by and between Caroline Hadaway, of Kent County, in the State of Maryland, of the first part, and Richard D. Hynson, and Caroline L. Hynson, executors of Richard Hynson, deceased, of Kent County, in the State of Maryland, of the second part.

" This agreement witnesseth, that the said Caroline Hadaway has, at the request of the executors of Richard Hynson, deceased, executed a deed for a certain farm sold by Richard Hynson, trustee, in his lifetime, to Lavinia A. Smith, it having been first agreed and understood between the said executors, that the claim of the said Caroline Hadaway against Richard Hynson, trustee, shall be adjusted in one of the three following ways :

" 1st.—It is agreed that if the sales reported by the said Richard Hynson, trustee, of the two farms of Edwin Smith and Caroline Hadaway are ratified by the Circuit Court for Kent County, Maryland, then if the said Caroline Hadaway so elect, she is to receive one-half of the sum ot $2,500 which it has been agreed the said Richard D. Hynson and Caroline L. Hynson, executors, shall pay the said Caroline Hadaway, and the like sum of $1,250, being in that event to be paid also to the heirs at law of Edwin Smith.

" 2nd.—The claim of Caroline Hadaway is to be submitted to arbitration.   The said Caroline Hadaway is to select one arbitrator, and the executors another, and if these two disagree they are to select a third.

" 3rd.—The said Caroline Hadaway, if she so elect, is to file her claim in the Circuit Court for Kent County, Maryland, in Equity, and obtain a decree for such sum of money as the Court shall award her, as the sum to which she is justly entitled in the settlement of the estate of her father.

"And it is expressly agreed and understood that the said deed from the said Caroline Hadaway was delivered to the executors upon the above understanding and agreement.".

Here follow the signatures of the parties.

On July 14th, 1896, Richard D. Hynson was, by an order of Court passed in the mortgage proceeding, made trustee in the place of Richard Hynson, deceased, and on the 29th of the same month, Hope Barroll, the administrator *d. b. n. c. t. a.* of John P. Smith, was, upon his own petition, also made a party to the case.

The proceedings were then sent to the auditor to distribute the $14,048.26 proceeds of the mortgage sales made by Hynson on June 20th, 1876, with leave to the parties to take testimony. Much testimony was taken and the auditor stated four accounts, according to the theories of the several parties, all of which were rejected by the Court. In rejecting these accounts the learned Judge below filed a long opinion, going carefully over the merits of the controverted matters and sending the case again to the auditor with specific directions as to the distribution to be made. The auditor stated a new account in accordance with the Court's direction, in which he allowed credits against the *sci. fa.* judgment for $20,895.83, sufficient to reduce the balance due thereon, as of the date of the mortgage sales, to $13,228.53, to which he first applied the net proceeds of sale and then awarded the residue thereof to the appellant and the heirs of her brother Edwin in equal shares. This account was finally ratified, as we have already said, by the order of October 21, 1898, from which the appeal is taken.

The contention of the appellant does not relate to the theory of the auditor's account, for she admits that the net

fund for distribution should be first applied to the payment
of the balance due on the *sci. fa.* judgment and the remain-
der divided between her and the heirs of her brother Edwin,
but she insists that the auditor in ascertaining the balance
due on the judgment failed to allow certain credits. The
most important credit for which she contends is for
moneys alleged to have been in the hands of Richard
Hynson as attorney for John P. Smith at the time of the
death of the latter, October 1st, 1872. To support her
claim in this respect, she produced in evidence before the
auditor a number of receipts and statements of accounts in
Hynson's handwriting, found among the papers of her father,
John P. Smith, and her brother, Edwin Smith. From these
she seeks to charge Hynson with the sum of $6,184.52 for
cash in hand and proceeds of collections from various sources
made by him for account of John P. Smith from January
14th, 1871, down to October 1st, 1872.

These papers, standing alone and unexplained, would ordi-
narily raise a *prima facie* presumption of an indebtedness
from Hynson to John P. Smith, but other facts in the case
may well be regarded as sufficient to overcome this pre-
sumption. In the *first place* the papers are produced by
persons having no personal knowledge of their contents,
twenty-five years after the date of the transactions to which
they relate and many years after the death of both parties
to the transactions; *secondly*, among the same papers were
found a statement of account, in the same handwriting, be-
tween Hynson and the executor of Smith, covering the same
period and coming down to February 4th, 1873, showing
a balance then due Smith's estate of $3,269.59, against which
there is a credit entry of the same amount for cash paid the
estate, and *thirdly*, Hynson in his sworn answer, filed Octo-
ber 12th, 1888, to the appellant's petition, positively asserts
that he in fact settled with the executor of John P. Smith
for all money due to his testator.

Apart from the hazard of relying upon ancient documents
such as these to establish at this late day the credits claimed

by the appellant, it appears affirmatively from the administration accounts of the executor of John P. Smith, which are in the record, that the three most important items claimed by her as parts of the $6,184.52 supposed by her to be due from Hynson, to-wit, $1,527.00 cash, $1,152.95 collected from Brice mortgage and $1,346.45 from the Jump mortgage, were paid to the executor after Smith's death. The same is true of some of the smaller items. The $500 due on mortgage from Robinson, which forms part of the $6,184.52 claimed by her, was collected by Hynson some time after Smith's death and the auditor allowed due credit for the amount, with interest, in ascertaining the balance due on the judgment.

We do not deem it necessary to review in detail the other credits claimed by the appellant. The learned Judge of the Circuit Court specifically directed the auditor to allow all of them for which the evidence is reasonably clear or satisfactory and we see no reason to add any other items.

The course of the appellant, in neither making nor procuring her father's executor to make any claim against Hynson for these considerable sums, which she alleges to have been due by him, until nearly fifteen years after her father's death, and then abandoning the petition in which she set up the claim, and not again asserting it until after the death of Hynson, who had vigorously denied it when first asserted, is characterized by such laches as not only to disentitle her to any special favor at the hands of the Court, but to incline us to deal strictly with the evidence by which she now seeks to maintain her claim. Equity has always refused its aid to stale claims where the party has slept upon his rights for a great length of time. Reasonable diligence, as well as conscience and good faith, is required to secure the aid of a Court of Equity. *Chew* v. *Farmers' Bank*, 2 Md. Chy. 231; *Nelson* v. *Hagerstown Bank*, 27 Md. 74–75; *Noble* v. *Turner*, 69 Md. 527.

Laches in the prosecution of a suit is as fatal to recovery

as delay in its institution.  *Johnson* v. *Standard Mining Co.*
148 U. S. 370; *Taylor, Adm.*, v. *Carroll, ante*, p. 32.

Even if the evidence relied on by the appellant to estab-
lish this alleged indebtedness to her father from Hynson, as
an individual, were such as to entitle it to be regarded with
greater favor, she could not litigate that issue in the present
proceeding, which had its origin in the report of a mortgage
sale for ratification.  The sale having been ratified, the
Court has now jurisdiction to distribute the proceeds of sale
according to the principles of equity, but it has no author-
ity to entertain and decide issues not relating to the mort-
gage debt, and not arising between parties to that instru-
ment or their assignees.  If there was anything due from
Hynson, individually, to John P. Smith, the right to collect
it devolved upon Smith's executor at his death, and he
alone could maintain an action for it.  The appellant has no
right to collect any such indebtedness or have it applied to
the payment of her own debts.

It is true that Smith's administrator, *d. b. n. c. t. a.*, has
recently been made a party to this proceeding, but that can
only permit him to assert any claim he may have upon the
proceeds of the mortgage sales, and cannot at all author-
ize the Court to entertain and pass upon conflicting claims
of the representatives of Hynson and Smith, as to the ex-
istence of an indebtedness from one to the other, growing
out of transactions having no relation to the mortgages
which produced the fund for distribution.  Still less can
the Court yield to the contention of the appellant that she
is entitled in this proceeding to have the Court not only
determine what, if any, sum is due from the estate of Hyn-
son to that of her father, growing out of the transactions
to which we have just referred, but also to ascertain and
award to her the share of such sum, to which she would be
entitled upon a division of her father's estate.

The appellant, however, contends that she, having elected
to proceed under the third provision of the agreement of
July 31, 1894, between her and Hynson's executors, is en-

titled to have all of the claims which she has set up considered and determined in this proceeding. The answer to this contention is two-fold; *first*, an inspection of that agreement shows that it relates only to the adjustment of "the claim of the said Caroline Hadaway against Richard Hynson, trustee," and, therefore, cannot be held to cover or include the claim of the estate of John P. Smith against Hynson, individually, or against his estate, and *secondly*, even if the parties to the agreement did intend by entering into it to enlarge the jurisdiction of the Court in the present proceeding, it was incompetent for them to do so. It is well settled that the consent of parties cannot confer a jurisdiction upon a Court which it did not have without such consent. *Price* v. *Hobbs*, 47 Md. 379.

The appellant also contented that when Hynson, as trustee, voluntarily released on December, 3rd, 1869, a portion of the lands of Abel J. Rees from the lien of the first judgment obtained on the bonds given for the purchase money for the "Shipyard Farm," he thereby released John P. Smith, the other surety, from liability on the bonds. The position of the appellant in this contention is not tenable, because the attempted release by the trustee of Rees' land was *ultra vires* and invalid. *Abell* v. *Brown*, 55 Md. 217. If Smith would have been originally entitled to rely upon this release by the trustee, as a discharge of his liability on the bond. on which he and Rees were cosureties ,the appellant is estopped from now relying upon that defence, because the judgment under the *sci. fa.* was rendered against Smith's executor on the 25th of October, 1871, which was some time after the release was made. A *scire facias*, although a judicial writ so far partakes of the nature of an original action that the defendant is entitled to plead to it any defence which goes to show that his liability has been discharged or extinguished. If a *sci.f a.* is issued against an original defendant or his admistrator to revive a judgment, and he is summoned, a judgment of *fiat* against him operates as a conclusive estoppel upon him against

thereafter asserting any defence to the original judgment which he neglected to plead to the *sci. fa.* *Star* v. *Heckart et al.*, 32 Md. 271-2; *2nd Tidd's Practice*, 1129, 1130; *Poe's Practice*, 585-602-604-609. ·

Apart from these somewhat technical objections to the · last mentioned contention of the appellant, there is evidence in the record tending strongly to show that John P. Smith both knew of and consented to the release of the land of his co-surety Rees. This testimony is confirmed by the fact that when Hynson, about six months after releasing the Rees land, applied to Court for an order of re-sale of the " Shipyard Farm," he recited the facts of the sale to Derrickson, the receipt of the bonds for the purchase money and the default of the purchaser, and Smith and Rees, both sureties, answered the petition, admitting that they were the sureties on the bonds, and that there had been default and consented to the re-sale.

Upon the whole case we think the decree appealed from should be affirmed with costs.

*Decree affirmed.*

(Decided May 11th, 1899).