# MAYOR AND ALDERMEN OF THE CITY OF ANNAPOLIS *v.* SHEARWATER SAILING CLUB, INC.

[No. 302, September Term, 1971.]

*Decided April 6, 1972.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Eugene M. Lerner, City Attorney,* for appellant.

*Bennett Crain, Jr.*, with whom were *Hartman & Crain* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

The Mayor and Aldermen of the City of Annapolis (the City), appellant, here complains because a trial judge granted a motion for summary judgment on behalf of appellee, Shearwater Sailing Club, Inc., (Shearwater). We shall affirm.

Shearwater applied to the Port Wardens of Annapolis for permission "to construct piers, pilings, bulkheading, and to dredge and fill" contiguous to its property on Spa Creek. For a review of the powers of that body under the charter of the City *see Port Wardens v. Md. Cap. Yacht Club,* 261 Md. 48, 273 A. 2d 102 (1971), and *Lunter v. Laudeman,* 251 Md. 203, 246 A. 2d 540 (1968). The Port Wardens considered and approved the application on June 18, 1970. More than 30 days later appeals were filed with the Mayor and Aldermen of Annapolis by certain individuals.

Section 40 of the Annapolis charter as amended on March 3, 1970, provides:

> "In all differences that shall arise between any citizen of Annapolis and the said Wardens, touching the discharge of their duty, an appeal de novo shall lie to the Mayor and Aldermen. Appeal must be filed in writing with the City Clerk within 30 days of the final decision of the said Port Wardens." [1]

Shearwater learned the day after the hearing that the application had been approved. It obtained this information by a telephone call from its president to the office of the Director of Public Works of the City, an *ex officio* member of the Port Wardens whose office seemed to be

---

1. Amended effective March 3, 1970, possibly in anticipation of our decision in Port Wardens v. Md. Cap. Yacht Club, *supra,* by providing specifically for a *de novo* appeal. *See* page 2021, Laws of Maryland, 1971.

responsible for their operation. The citizens who attempted to appeal to the Mayor and Aldermen did not learn of the decision until more than 30 days after it was made.

The minutes of the Port Wardens reflect opposition to the application by three named individuals, none of whom were appellants. One of the objectors presented a petition with the names of 30 people on it who were said to oppose the application. She was asked for a better copy of the petition "as many of the names were illegible." The president of Shearwater also requested a copy. It is claimed that the objector asked to be notified of the decision of the Port Wardens and was told that she would be so notified, a point which is in dispute.

The names of individuals who appealed to the City do not appear in the minutes of the Port Wardens as opponents of the application, nor have they claimed that their names were among those on the petition in opposition to the proposal or that they were present as protestants at the hearing before the Port Wardens. In fact, the individual who executed the affidavit in opposition to the motion for summary judgment there alleged that there was a promise at the public hearing to notify a representative of the protestants of the action of the Port Wardens "[a]lthough [she did] not have personal knowledge of that fact." From this the inference can be drawn that she was not present at the hearing. In short, there is nothing in the record to disclose any opposition on their part to the proposal prior to the appeal.

The Mayor and Aldermen determined, against the advice of the city attorney who here has the unhappy task of attempting to defend a position contrary to his advice, that it would hear the appeal notwithstanding the time when it was filed. It denied the application. Shearwater then filed a bill of complaint in the Circuit Court for Anne Arundel County for a declaration that the resolution of the City was "unconstitutional, illegal and void" and to require issuance of a building permit. Those who

had appealed to the Mayor and Aldermen were permitted to become parties to the proceeding in the circuit court. Shearwater moved for summary judgment which was granted by Judge Mayfield on the ground that the appeal was not timely filed with the Mayor and Aldermen.

The City points to Code (1957, 1966 Repl. Vol.) Art. 23A, § 8 providing that all meetings of the legislative bodies of municipal corporations "shall be public meetings and open to the public at all times," except that executive sessions may be held, "but no ordinance, resolution, rule or regulation shall be finally adopted at such an executive session." It contends that the action approving Shearwater's application was taken at an executive session and "that there was a legal obligation and duty on the part of the Port Wardens to make its decision known to those who were promised notification." Parenthetically it should be said that nowhere in the record does it appear that this action was held at "an executive session from which the public [was] excluded." It may well be true that the public was not present when the action was taken, but that fact does not mean that the public was excluded. We do not regard that point as decisive here, however. The City then goes on to fashion an argument that "since notice of the decision was not given to the Citizens of Annapolis by the Port Wardens * * * any Citizen could appeal within 30 days of notice or when he learned of the decision. The appeal in this case was noted as soon as it could be, as soon as notice of the decision was made known." Therefore, it concludes the appeal is proper.

The fallacy in the City's argument is its assumption that "any citizen" could appeal. The right of appeal does not automatically flow from the fact that an individual may be unhappy or dissatisfied with some particular decision. In *Bosley v. Dorsey,* 191 Md. 229, 60 A. 2d 691 (1948), the People's Counsel for the Public Service Commission of Maryland attempted to appeal from a decision of that commission setting rates. He contended he had

the right to appeal as an agent of the persons affected by an order fixing gas and electric rates, and that the Public Service Commission law gave him this right by implication. The Court held that he did not come within the statute giving "the right to proceed in the courts to vacate, set aside or have modified any order of said Commission on the grounds that such order is unreasonable or unlawful" to "[a]ny company, corporation, association, person or partnership subject to any of the provisions of [that] subtitle, or other person or party in interest." It has been held that when circuit courts sit in the exercise of a special, limited statutory jurisdiction there is no appeal to this Court unless the appeal is granted by statute. *Simpler v. State, Use of Boyd,* 223 Md. 456, 460-61, 165 A. 2d 464 (1960) ; *Davis v. Board of Education,* 166 Md. 118, 123, 170 A. 590 (1934) ; *M., &c., Hyattsville v. Washington, W. & G.R.R.,* 124 Md. 577, 580, 93 A. 151 (1915), and cases there cited. More recently in *Urbana Civic v. Urbana Mobile,* 260 Md. 458, 272 A. 2d 628 (1971), we held the County Commissioners of Frederick County without authority to pass an ordinance providing for judicial review of subdivision regulations.

Parties to a proceeding cannot by their consent confer jurisdiction on this Court to hear a matter. *Eggert v. Montgomery Co. Council,* 263 Md. 243, 247, 282 A. 2d 474 (1971), and *Price v. Hobbs,* 47 Md. 359, 378 (1877). Nor may the parties by consent confer jurisdiction upon any court. *Hadaway v. Hynson,* 89 Md. 305, 315, 43 A. 806 (1899) ; *Danner v. State,* 89 Md. 220, 228, 42 A. 965 (1899) ; and *Meyer v. Henderson,* 88 Md. 585, 593, 41 A. 1073 (1899). In *Price* Judge (later Chief Judge) Alvey said for the Court:

> "These actions being actions at law, of course, no consent of parties can confer power or jurisdiction on this court to review the judgments therein, and determine the rights of parties upon any other principles than such as properly

apply to such actions, and which the court below would have been authorized to make the rule of its decision. Otherwise, it would be in the power of the parties to a cause, by their mere agreement, to confer original jurisdiction, where the Constitution and laws have conferred appellate jurisdiction only. The jurisdiction of this court is one solely of review, and the consent of parties cannot clothe it with power, on an appeal from a judgment at law, to convert the action into a bill in equity, and so shape and form the proceedings as to give force and effect to principles exclusively of equitable cognizance. It is a well established maxim that consent of parties will not confer jurisdiction on a court, where no jurisdiction exists without such consent. *Bents v. Graves,* 3 McCord, 280; *Overstreet v. Brown,* 4 McCord, 79; *Lindsay v. McClelland,* 1 Bibb, 262." *Id.* at 378-79.

Where a statute establishes a fact-finding body or commission and it has jurisdiction over the parties and the subject matter its decisions on questions of fact are conclusive and final in the absence of fraud, unless an appeal is provided by law to some appellate or supervisory tribunal. *Schluderberg, Etc. Co. v. Baltimore,* 151 Md. 603, 613-14, 135 A. 412 (1926).

In cases that have arisen under some zoning ordinances a person in order to appeal must be one "aggrieved by the decision of the board." In *DuBay v. Crane,* 240 Md. 180, 213 A. 2d 487 (1965), Judge Horney said for the Court:

"In zoning cases, the rule in this State is that for a person to be aggrieved by an adverse decision of the administrative agency, and thus entitled to appeal to the courts, the decision must not only affect a matter in which the protestant has a specific interest or property right but his interest therein must be such that he is

personally and specially affected in a way different from that suffered by the public generally. See *Loughborough v. Rivermass,* 213 Md. 239, 131 A. 2d 461 (1957) ; *Pattison v. Corby,* 226 Md. 97, 172 A. 2d 490 (1961) ; *Toomey v. Gomeringer,* 235 Md. 456, 201 A. 2d 842 (1964) ; *Marcus v. Montgomery County Council,* 235 Md. 535, 201 A. 2d 777 (1964) ; and *City of Greenbelt v. Jaeger,* 237 Md. 456, 206 A. 2d 694 (1965)." *Id.* at 185.

*See also Shore Acres v. Anne Arundel Co.,* 251 Md. 310, 316, 247 A. 2d 402 (1968) ; *Bryniarski v. Montgomery Co.,* 247 Md. 137, 144, 230 A. 2d 289 (1967) ; and *Town of Somerset v. Board,* 245 Md. 52, 225 A. 2d 294 (1966).

The appeal granted in the Annapolis charter is concerned with "differences that shall arise between any citizen of Annapolis and the said Wardens, touching the discharge of their duty." *Webster's Third New International Dictionary* (unabr. ed. 1961) defines "difference" in the sense it is here used as "disagreement in opinion," while *The Random House Dictionary of the English Language* (unabr. ed. 1967) defines it as "a dispute or quarrel." In *Port Wardens v. Md. Cap. Yacht Club,* 261 Md. 48, 59, we expressly held under the charter provision as it then existed that the appeal to the Mayor and Aldermen from the Port Wardens was "confined to the record made before the Port Wardens and that no *de novo* hearing [was] contemplated." Although the charter has since been amended to provide for a *de novo* hearing, the charter provision has not otherwise been changed.

We conclude that the "disagreement in opinion," "dispute," or "quarrel" by way of a "difference" that a citizen of Annapolis may have with the Port Wardens which he may appeal to the Mayor and Aldermen is not a mere disapproval as a member of the public at large of some action of the Port Wardens, but must arise from that citizen's having been involved in a matter pending before that body, either as applicant or protestant, a person

involved in the record making process. The appellants from the decision of the Port Wardens do not appear from the record to have been involved in any way in the hearing. Therefore, there is no difference which they are permitted to appeal and that appeal should not have been entertained by the Mayor and Aldermen for that reason. Accordingly, we do not reach the question of the timeliness of the appeal.

*Order affirmed; appellant to pay the costs.*