678 A.2d 55

## MARYLAND COMMISSION ON HUMAN RELATIONS

v.

## DOWNEY COMMUNICATIONS, INC.

No. 931, Sept. Term, 1995.

Court of Special Appeals of Maryland.

June 26, 1996.

494

496

498

500

Kathy M. Britton–Bracey, Asst. Gen. Counsel (Glendora C. Hughes, Gen. Counsel, on the brief), Baltimore, for appellant.

Victor A. Kubli (Law Offices of Alan M. Grayson, on the brief), Germantown, for appellee.

Argued before WILNER, C.J., and HOLLANDER and SALMON, JJ.

HOLLANDER, Judge.

In 1994, Margaret C. Walters filed a complaint with the Maryland Commission on Human Relations (the "Commission"), appellant, alleging that Downey Communications, Inc. ("Downey"), appellee, had discriminated against her because of her gender and pregnancy. During the course of the Commission's investigation, Downey threatened to take legal action against Walters unless she withdrew her complaint. The Commission responded by filing in the Circuit Court for Montgomery County a petition for *ex parte*, interlocutory and permanent injunctive relief, seeking to enjoin Downey from threatening, harassing, or suing Walters. After the circuit court denied the *ex parte* request, the Commission noted its appeal. Downey proceeded to file suit against Walters in Virginia, where Walters resides.

We now consider whether an employer under investigation by the Commission for violation of the Maryland Fair Employment Practices Act ("FEPA"), Maryland Code (1957, 1994 Repl. Vol.), Article 49B, §§ 14–18, may be enjoined from pursuing a lawsuit against the complainant during the pendency of the investigation and before the agency has completed its adjudicatory function. We shall also determine whether, based on the employer's alleged violation of the anti-retaliation provision of FEPA, Article 49B, § 16(f), the Commission may bypass the FEPA statutory scheme and obtain

directly from the circuit court a permanent injunction restraining the employer from filing suit.[1]

Multiple issues have been raised by the parties. The first of these is presented by Downey; the remaining issues are presented by the Commission:

I. Whether this matter is moot?

II. Whether the lower court erred in refusing to enjoin Downey from harassing and threatening to take civil action against Margaret Walters for filing an employment discrimination complaint with the Maryland Commission on Human Relations?

 A. Whether the lower court erred in finding that the Commission had not met its burden of showing irreparable harm?

 B. Whether there is a likelihood of success on the merits of Walters's case?

 C. Whether it is against the public policy of the State of Maryland to permit a respondent, complained against before the Commission, to threaten and/or file suit against a complainant before the Commission has completed its investigation?

 D. Whether refusing to issue the injunction caused greater harm than issuing the injunction would have caused to the Appellee?

III. Whether the lower court erred in interpreting Article 49B, Section 12 of the Maryland Code to permit a respondent employer to threaten to bring a civil action against a complainant for filing an employment discrimination complaint, despite the respondent's retaliatory motive?

 A. Whether threatening to file a civil action against a complainant by a respondent complained against in an employment discrimination complaint constitutes retaliation under Article 49B, Section 16(f)?

---

1. Although the Commission unsuccessfully sought to restrain Downey from harassing the Commission's employee, the Commission has not pursued that request in this appeal.

B. Whether the threats and/or institution of a civil suit against Walters for refusing to withdraw her employment discrimination complaint was for the impermissible purpose of retaliating against her for the exercise of her protected right?

We shall affirm the denial of the *ex parte* injunction. As the trial court did not resolve the Commission's requests for interlocutory and permanent injunctions, however, we shall discuss these matters for the guidance of the court. We conclude that, prior to the agency's resolution of its investigatory and adjudicatory functions, an employer may be enjoined from pursuing a lawsuit against a claimant, if the suit involves essentially the same issues under consideration by the Commission, and the Commission has subject matter jurisdiction. We conclude, further, that the Commission may not bypass the FEPA statutory scheme and obtain a final injunction from the circuit court, based on a determination that an employer has violated FEPA's anti-retaliation provision.

## FACTUAL BACKGROUND

On June 9, 1994, Walters, who is a resident of Arlington, Virginia, filed with the Commission a sworn complaint against Downey. In her complaint, Walters alleged that, in April 1994, she had applied for a "manager of client service" position. She further stated that she was "extensively interviewed for the position on separate occasions" and that, on June 1, 1994, Harvey Richmond, the vice president of sales and marketing, orally extended an offer of employment. This oral offer was followed by a written confirmation letter dated June 3, 1994.

Walters contended that, on June 7, 1994, she called Richmond and accepted the offer. At the same time, she advised him that she was pregnant and that her baby was due in October 1994. Walters alleged that Richmond then indicated to her "that he would manage the situation internally." Later that same day, according to Walters, Richmond informed her that the company had agreed to purchase a new data base

system, and that the requirements for the position for which she was to be hired had therefore changed. As a result, Richmond rescinded the job offer. Two days later, Walters filed her charge with the Commission, alleging that Downey had discriminated against her on the basis of her gender and pregnancy, in violation of FEPA.[2]

Downey, an Illinois corporation that publishes magazines such as *Military Life, Military Grocer,* and *Military Exchange,* claims that Walters never applied for a position with Downey. Instead, Downey claims that Walters applied for a position with, and was offered a position by, Marketing & Management Information, Inc. ("MMI"), a company that is located on the same floor of an office building as Downey. According to Downey, MMI is a District of Columbia corporation that processes and distributes sales and marketing data. Downey alleges that Richmond's offer to Walters was on MMI letterhead.

The record contains a photocopy of a letter that purports to be the offer letter from Richmond to Walters; the letter is, in fact, on MMI letterhead. It does not appear, however, that the Commission submitted this letter to the circuit court in connection with its petition for injunctive relief. Rather, the Commission attached the letter as an exhibit to its memorandum in support of a simultaneous petition to enforce a subpoena *duces tecum* that it had served on Downey. The next succeeding paper in the record is a list of *Downey* employment benefits. In its effort to enforce the subpoena, the Commission contended that the list of Downey employment benefits was mailed to Walters with the offer letter. In addition, the

---

**2.** Article 49B, § 16(a)(1) provides, in pertinent part, that it is an unlawful employment practice for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...."

Article 49B, § 17 requires that disability due to pregnancy or childbirth be treated like other temporary disabilities for purposes of such terms of employment as health and disability insurance, sick leave, the availability of extensions, and the accrual of seniority.

record contains a Federal Express mailing label that identifies the sender as "Harvey A. Richmond" of "Downey Communications" and the recipient as Walters. It also appears from these documents that Downey's mailing address is the same as MMI's mailing address.

The record also contains a letter to Walters from Downey's legal counsel, Alan M. Grayson and Fred A. Cohen, dated June 27, 1994. The letter stated that Downey was "very proud of its long, unblemished record of fair and equal employment practices, which has never been questioned before." Counsel wrote:

Downey wants you to know that there is nothing about you, including the fact that you are pregnant, that had any influence whatsoever on the requirement to delay the challenged hiring decision. The offer that was made to you was not consummated because of business circumstances that did not exist at the time the offer was made.

The letter explained the change in Downey's computer operating system and said: "Your pregnancy was in no way involved in the decision to delay hiring," and, "We are sorry that you feel discriminated against because you were pregnant."

Counsel added that Downey "underst[ood] [Walters's] disappointment," and, "[i]n this spirit," Downey offered to settle Walters's claim by paying her the after-tax difference between one year of the compensation package that was offered to her and one year of the compensation that she was then receiving from her employer. The letter does not contain a denial that Downey had offered a job to Walters or a claim that she was pursuing the wrong company.

In December 1994, Walters filed an amended charge with the Commission, in which she added MMI as a respondent. Although the charge was submitted in December 1994, it was dated June 9, 1994. In response, Cohen, as the attorney for both Downey and MMI, contended in a letter to the Commission that the charges of discrimination were unfounded and that the Commission lacked jurisdiction, because the amended

complaint was filed after the expiration of the six month statute of limitations, set forth in Article 49B, § 9A.[3]

The Commission pursued the theory that Downey and MMI were "integrated businesses" and "sister corporations." On January 17, 1995, the Commission served a subpoena on Downey, demanding the production of various categories of documents pertaining to both businesses, including "[a]ll documents related to any partnerships, joint ventures, or other combinations or enterprises, without limit, among, between, or involving in any way [MMI, Downey, and certain named individuals]," and all documents related to Downey's equipment, financing, temporary personnel, and office supplies.[4]

Cohen responded on March 14, 1995 with a sharply worded letter to Elaine Sykes, the Commission official assigned to investigate Walters's complaint. The letter repeated Downey's contention that it was MMI, and not Downey, that had made the employment offer to Walters. Cohen wrote: "All you have to do is read the correspondence in question, and see that for yourself. Notwithstanding that, for the better part of a year you have harassed Downey ... because [it] has the misfortune of being located on the same floor as MMI." The letter also contended that the Commission's subpoena constituted a "fishing expedition" intended to salvage the untimely claim against MMI by "pin[ning] an alleged MMI employment offer on [Downey]."

In addition, Cohen argued that the subpoena was "not authorized" by law or by the Commission's regulations, in that it sought material that was not "relevant" or "necessary" for its investigation within the meaning of Article 49B, § 11(d). He also asserted that the subpoena was "grossly overbroad

---

3. Article 49B, § 9A states, in pertinent part: "A complaint must be filed within six months from the date of the occurrence alleged to be a violation of this article."

4. Article 49B, § 11(d) of the Code empowers the Commission, *inter alia*, "to issue subpoenas" and to "[c]ompel the production of books, papers, records and documents relevant or necessary for proceedings under the particular subtitle."

and burdensome" because it effectively sought *"every single document"* in Downey's possession and would bring Downey's operations "to a virtual standstill for weeks." (Emphasis in original). Cohen particularly objected to the Commission's request for documents pertaining to Downey's office supplies, saying, "This example speaks volumes about the abuse your subpoena attempts to inflict. The identity of, *e.g.,* the purchaser of the paper clips sheds *no* light on the issue of who allegedly discriminated against the Complainant." (Emphasis in original).

In his criticism of Sykes's handling of the investigation, Cohen claimed that she was attempting to "harass and abuse" Downey, and added that Sykes had been "extremely abusive to counsel." Cohen stated:

> Since you had MMI's alleged employment letter from the start of this investigation, and you nevertheless investigated [Downey] for more than six months without any complaint being issued against MMI, we believe that this subpoena is a lame effort to cover up your own mistake. Your unprofessional conduct toward counsel for the Respondent supports this hypothesis. You have lost all objectivity, and you have no business remaining on this case.

Further, Cohen asserted that Downey would not comply with the subpoena, and he demanded that it be withdrawn:

> Based on these objections, you must withdraw your subpoena. The Respondent will vigorously contest any misguided effort to enforce the subpoena, and seek counter-remedies in any such proceeding. Indeed, only the requirement to exhaust administrative remedies keeps the Respondent from suing you right now.

Cohen concluded by saying:

> Any effort to enforce this subpoena would be absurd, but if you do so, we look forward to the opportunity of deposing you, and giving you a taste of your own medicine. Furthermore, if we have to spend the additional time and effort to protect ourselves from your excesses, be assured that we

will carefully consider *all* our remedies, including an action
for abuse of process against you individually.

(Emphasis in original).

Subsequently, Cohen warned Walters that Downey would
file suit against her if she did not withdraw her charge. The
first warning came in a letter dated April 11, 1995, sent to
Walters at her Virginia home by certified mail. The letter
asserted that Downey and MMI were separate companies,
that Walters had applied for a position with MMI and not
Downey, and that her offer of employment was on MMI
letterhead. The letter stated:

> In short, you never applied for any employment with
> [Downey], you never communicated with [Downey], and
> [Downey] never took any employment action with respect to
> you. Despite all of this, you have complained that [Downey]
> has discriminated against you, causing [Downey] to incur
> substantial costs in defending itself against a *totally baseless*
> claim. You have failed to withdraw your complaint against
> [Downey] despite being repeatedly advised of your error in
> complaining against the wrong company. If you do not
> withdraw your complaint against [Downey] within seven
> days from the date of this letter, then [Downey] will have no
> alternative but to pursue all legal remedies against you,
> including but not limited to an action against you personally
> for malicious prosecution or abuse of process.

(Emphasis in original). On or about April 17, 1995, an Arling-
ton County deputy sheriff delivered another copy of the letter
to Walters at her home.

On April 24, 1995, the Commission filed a petition to enforce
its subpoena. At the same time, relying, *inter alia*, on Article
49B, § 4, the Commission filed a petition for *ex parte*, interloc-
utory and permanent injunctive relief, under oath, and execut-
ed by the Commission's deputy director, general counsel, and
assistant general counsel. The petition, which was supported
by an affidavit from Sykes, alleged that Downey had threat-
ened to sue both Walters and Sykes, and it claimed that
Downey's letter of April 11, 1995 was intended to threaten,

harass, and intimidate Walters to prevent her from proceeding with her employment discrimination complaint. The petition averred:

If [Downey] is permitted to continue to systematically threaten [Walters] and the Commission official charged with the investigation of this matter, it will severely undermine the Commission's mandate to investigate employment discrimination, when it is alleged and remedy it, if found to exist.

Based on these contentions, the Commission sought to enjoin Downey from (1) "threatening" to sue Walters if she did not withdraw her charge, (2) threatening to sue Sykes, and (3) "taking any further actions against Ms. Walters or other employees or former employees of [Downey] or MMI or other witnesses in retaliation for her pursuing a complaint with the Commission or participating in this injunction proceeding."

Downey responded by filing an affidavit from Loretta Downey, the chief executive officer of the company, which asserted that "this is a case of mistaken identity." It also repeated Downey's contention that it had been MMI, and not Downey, that had made the employment offer in question, and that Downey "had no involvement whatsoever in the employment process." Ms. Downey added that Walters's "claim was completely spurious, because it was known that she was pregnant before the offer was made, and therefore her pregnancy had no bearing on [the] withdrawal of the offer." The affidavit further asserted that Sykes was carrying out a "vendetta" against Downey to "cover up her mistake" of letting the six month limitations period lapse. It also repeated the allegation that the Commission's subpoena was too broad and burdensome.

In the concluding paragraphs of the affidavit, Ms. Downey stated:

[Downey] is struggling; we just stopped publication of our flagship magazine, after running losses in the millions. Over the past ten months, I have watched with horror as [Downey] has incurred mounting legal fees to defend

against this vindictive action. MMI is a successful company. If the Commission had filed a timely complaint against MMI, MMI would have defended it vigorously. Instead, [Downey] has to spend its time and money defending this frivolous action, when it had no involvement in the offer of employment at all. Now, the Commission has faxed a petition for ex parte relief to my attorney on a Friday, when he was in Boston, demanding a hearing on Monday morning. This is bureaucracy gone wild.

The Commission's own governing statute specifically provides that respondents retain *all rights to legal actions* against complainants. The Commission is annoyed at our impudence in pointing this out to Ms. Walters, after ten months of suffering. I implore the Court to right this wrong, and not let the petty obsessions of bureaucrats cause us any further harm.

(Emphasis in original).

After a chambers conference held that same day (April 24, 1995), the judge signed a written order stating that he was "not ... satisfied" that the Commission had met its burden and, therefore, he denied the "*ex parte* petition." The order does not address the Commission's request for interlocutory or permanent injunctive relief, however.

The parties advise us in their briefs that, on May 1, 1995, after the denial of the request for the injunction but before the Commission noted its appeal, Downey filed suit against Walters in the Circuit Court for Arlington County, Virginia, for breach of contract and either malicious prosecution or abuse of process, seeking $95,000.00 in damages. According to Downey, the breach of contract count is based on an allegation that Walters breached a settlement agreement in the sex discrimination case, allegedly executed in December 1994. While we have not been provided with a copy of the suit, the parties agree that the case is still pending in the Virginia court. The parties also inform us that, on December 27, 1995, the Commission transferred Walters's complaints against both Downey and MMI to the federal Equal Employment Opportunity

Commission ("EEOC") for completion of the investigation. The Commission states that this transfer was made pursuant to a worksharing agreement between the two agencies.

## DISCUSSION

### I.

We first consider Downey's contention that the Commission's appeal is moot, because (1) it has already filed suit against Walters; (2) the Commission transferred Walters's case to the EEOC; and (3) we cannot interfere with judicial proceedings in another state. In view of the transfer to the EEOC, Downey asserts that there is no longer a Commission investigation with which Downey's actions would interfere. Moreover, as Walters has already been sued, she is no longer "threatened" with litigation, so that the Commission's request for an injunction is too late. Downey adds that, because it filed suit in Virginia, any injunction would impermissibly "interfere" with the judicial processes of another jurisdiction. In our view, the matter is not moot.

" 'A question is moot if, at the time it is before the court, there is no longer an existing controversy between the parties, so that there is no longer any effective remedy which the court can provide.' " *Insurance Commissioner of the State of Maryland v. Equitable Life Assurance Society of the United States,* 339 Md. 596, 613, 664 A.2d 862 (1995), quoting *Attorney General v. Anne Arundel County School Bus,* 286 Md. 324, 327, 407 A.2d 749 (1979). *See also Adkins v. State,* 324 Md. 641, 646, 598 A.2d 194 (1991); *Koontz v. Association of Classified Employees,* 297 Md. 521, 529, 467 A.2d 753 (1983); *Beeman v. Department of Health and Mental Hygiene,* 105 Md.App. 147, 157, 658 A.2d 1172 (1995); *Williams v. Williams,* 63 Md.App. 220, 225, 492 A.2d 649 (1985). The doctrine of mootness applies to situations in which "past facts and occurrences have produced a situation in which, without any future action, any judgment or decree the court might

enter would be without effect." *Hayman v. St. Martin's Evangelical Lutheran Church,* 227 Md. 338, 343, 176 A.2d 772 (1962).

■ When we determine that a case is moot, our usual practice is to dismiss the appeal. *See In re Riddlemoser,* 317 Md. 496, 502, 564 A.2d 812 (1989); *Lucky Stores, Inc. v. Board of Appeals of Montgomery County,* 270 Md. 513, 538, 312 A.2d 758 (1973); Md. Rule 8–602(a)(10). This practice derives from the principle that appellate courts do not render advisory opinions on academic or abstract propositions. *See County Commissioners of Charles County v. Secretary of Health and Mental Hygiene,* 302 Md. 566, 568, 489 A.2d 1127 (1985); *Bishop v. Governor of Maryland,* 281 Md. 521, 524, 380 A.2d 220 (1977); *Lloyd v. Board of Supervisors of Elections of Baltimore County,* 206 Md. 36, 39, 111 A.2d 379 (1954). *See also National Collegiate Athletic Association v. Tucker,* 300 Md. 156, 476 A.2d 1160 (1984) (appeal from issuance of injunction ordering N.C.A.A. to allow student-athletes to play in remaining lacrosse games of season was moot, where students had played in those games and season had ended); *State v. Ficker,* 266 Md. 500, 507, 295 A.2d 231 (1972) (State's suit to enjoin candidate from unlawfully posting political signs on public property was moot, where acts sought to be enjoined had ceased and offending signs had been removed).

■ As we have observed, Downey contends that this case is moot because the Commission sought to prevent Downey from "threatening" to take action against Walters, but Downey has already filed suit against her. The Commission's petition, however, did not seek only to enjoin Downey from "threatening" to take action against Walters; the Commission also sought to enjoin Downey "from taking any further actions" against Walters "in retaliation for her pursuing a complaint." "Any further actions" includes actually suing Walters. Thus, the Commission's request is not moot; there is still a live controversy about Downey's *current* action of

pursuing its lawsuit against Walters in Virginia, for which there could be an effective remedy.

■ Nor can we accept Downey's related argument that such an injunction is unavailable because it would "interfere with the judicial proceedings of another jurisdiction." Courts of equity in Maryland have the authority, under appropriate circumstances, to restrain persons within their jurisdiction from prosecuting actions in the courts of other states. *See State v. 91st Street Joint Venture,* 330 Md. 620, 629, 625 A.2d 953 (1992); *Miller v. Gittings,* 85 Md. 601, 618–20, 37 A. 372 (1897); *Keyser v. Rice,* 47 Md. 203, 213 (1877). This authority is not based on any supposed right of a Maryland court to interfere with a court of another state, but is instead founded upon the equity court's authority over persons within its *own* jurisdiction "to restrain them from doing acts which will work wrong and injury to others, and are contrary to equity and good conscience." *Keyser,* 47 Md. at 213.

■ We also reject Downey's contention that the transfer of Walters's case to the EEOC renders this appeal moot because there is no longer any Commission investigation that Downey's conduct could allegedly hamper. The Commission argued in its request for injunctive relief that Downey's actions would "severely undermine" the agency's ability to investigate and remedy employment discrimination. According to the Commission, a lawsuit against Walters would intimidate her and others from prosecuting discrimination claims and would thus inhibit the Commission's ability to carry out its mandate. This alleged injury clearly survives the transfer of Walters's case to the EEOC. Moreover, FEPA "is but a component in a comprehensive national civil rights enforcement scheme." *Parlato v. State Commission on Human Relations,* 76 Md. App. 695, 705, 548 A.2d 144 (1988), *cert. denied,* 314 Md. 497, 551 A.2d 867 (1989). Therefore, even if Walters's case is now being handled by the EEOC, Downey's activities could have an adverse impact on the Commission's investigatory abilities.

We conclude from the foregoing that the instant case still presents an actual grievance for which a court could fashion an

effective remedy. Therefore, the matter is not moot.[5]

## II.

We next turn to the merits of the injunction request. An "injunction" is "a writ framed according to the circumstances of the case commanding an act which the court regards as essential to justice, or restraining an act which it esteems contrary to equity and good conscience." 12 Maryland Law Encyclopedia, *Injunctions* § 1 at 250 (1961). There are, generally, three types of injunctions: *ex parte* injunctions, interlocutory injunctions (also known as "preliminary" or "temporary" injunctions), and permanent or final injunctions.[6]

An *ex parte* injunction is "an injunction granted *ex parte* by the court without an adversary hearing on the propriety thereof." Md. Rule BB70b.[7] It is reserved for a narrow set of cases, in which the applicant must establish "from specific facts shown by affidavit, or a verified pleading with or without supporting affidavit or sworn testimony, that *immediate, substantial and irreparable harm* will result to the applicant before an adversary hearing can be had." Md. Rule BB72a (emphasis supplied). *Ex parte* injunctions are

---

5. Because of our resolution of this issue, we need not consider the Commission's alternative argument that the matter is not moot because the issue is one of public importance and may recur while evading review. *See State v. Parker*, 334 Md. 576, 584, 640 A.2d 1104 (1994); *Beeman v. Dept. of Health and Mental Hygiene, supra*, 105 Md.App. at 158, 658 A.2d 1172; *C.N. Robinson Lighting Supply Co. v. Board of Education of Howard County*, 90 Md.App. 515, 526, 602 A.2d 195, *cert. denied*, 326 Md. 662, 607 A.2d 7 (1992); *Coleman v. Coleman*, 57 Md.App. 755, 758, 471 A.2d 1115, *cert. denied*, 298 Md. 353, 469 A.2d 1274 (1984).

6. Maryland Rule BB70d refers to a "final injunction" as "final or permanent in its nature...." Injunctions may also be classified as "mandatory" or "affirmative" injunctions, which require or command a specified action, and "prohibitory" or "negative" injunctions, which forbid or restrain a specified action. Md. Rule BB70a. This distinction is not relevant to the issues on this appeal, however.

7. Nevertheless, the court may notify the person against whom the injunction is sought. *See* Rule BB72a. Nor is it uncommon for the adversary to appear at the *ex parte* hearing.

"intended to suspend action until an opportunity is afforded the defendants to answer and defend." *Harford County Education Association v. Board of Education of Harford County,* 281 Md. 574, 585, 380 A.2d 1041 (1977). The judge may grant the injunction without consulting the opposing party, but the injunction must expire after a very brief time period established by Rule BB72b. Moreover, the enjoined party has the right to request relief and to have a hearing "at the earliest possible time." Md. Rule BB72b & c.

An "interlocutory injunction" is defined in the Maryland Rules as "an injunction granted after an adversary hearing on the propriety thereof, but before a determination of the merits of the action." Md. Rule BB70c. Its purpose is to preserve the status quo between the parties, pending a hearing on the merits. *See Harford County Education Association, supra,* 281 Md. at 585, 380 A.2d 1041; *Kahl v. Consolidated Gas, Electric Light & Power Co. of Baltimore,* 189 Md. 655, 658, 57 A.2d 331 (1948); *TJB, Inc. v. Arundel Bedding Corp.,* 63 Md.App. 186, 190, 492 A.2d 365 (1985); *General Motors Corp. v. Miller Buick, Inc.,* 56 Md.App. 374, 386, 467 A.2d 1064 (1983), *cert. denied,* 299 Md. 136, 472 A.2d 999 (1984). In other words, this type of injunction is designed to maintain the "last actual, peaceable, noncontested status which preceded the pending controversy" until the parties' rights and obligations can be adjudicated in a full trial. *See State Department of Health and Mental Hygiene v. Baltimore County,* 281 Md. 548, 556 n. 9, 383 A.2d 51 (1977) (quotation omitted).

In order to obtain an interlocutory injunction, the party seeking the injunction has the burden to satisfy the following four criteria:

(1) there is a real probability that the party seeking the injunction will succeed on the merits;

(2) the injury that would be suffered if the interlocutory injunction is granted is less than the harm that would result from its refusal (the "balance of convenience test");

(3) the party seeking the injunction will suffer irreparable injury if it is not granted; and

(4) granting the injunction would be in the public interest. *Fogle v. H & G Restaurant, Inc.*, 337 Md. 441, 455–56, 654 A.2d 449 (1995); *Department of Transportation v. Armacost*, 299 Md. 392, 404–05, 474 A.2d 191 (1984); *Teferi v. Dupont Plaza Associates*, 77 Md.App. 566, 578, 551 A.2d 477 (1989).

 But, "in litigation between governmental and private parties, or in cases in which injunctive relief directly impacts governmental interests, 'the court is not bound by the strict requirements of traditional equity as developed in private litigation.'" *Fogle, supra*, 337 Md. at 456, 654 A.2d 449, quoting *State Department of Health and Mental Hygiene v. Baltimore County, supra*, 281 Md. at 555, 383 A.2d 51. Rather, "'[c]ourts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.'" *Fogle*, 337 Md. at 456, 654 A.2d 449, quoting *Space Aero Products Co., Inc. v. R.E. Darling Co., Inc.*, 238 Md. 93, 128, 208 A.2d 74, *cert. denied*, 382 U.S. 843, 86 S.Ct. 77, 15 L.Ed.2d 83 (1965).

 A permanent injunction is, as its name indicates, "an injunction final or permanent in its nature granted after a determination of the merits of the action." Md. Rule BB70d. But a permanent injunction is not "permanent" in the sense that it must invariably last indefinitely. Rather, it "is one granted by the judgment which finally disposes of the injunction suit." 43 C.J.S. *Injunctions* § 6 (1979). The difference between an interlocutory injunction and a permanent injunction turns on "whether there has been a determination on the merits of the claim. If that determination has been made, then the injunction may be final; if not, it is interlocutory." *National Collegiate Athletic Association v. Johns Hopkins University*, 301 Md. 574, 580, 483 A.2d 1272 (1984).

 In this case, the parties address the propriety of the circuit court's denial of the injunction by arguing about whether the court correctly denied a request for an *interlocutory*

injunction. They discuss whether the Commission satisfied the four interlocutory injunction factors. The Commission makes no reference to the "immediate, substantial and irreparable injury" standard for granting an *ex parte* injunction. Nor does it argue why it needed the injunction "before an adversary hearing can be had." Additionally, the Commission does not refer to Maryland Rule BB72, which governs *ex parte* injunctions.

It is plainly evident to us that the court did not resolve the interlocutory injunction request. While the Commission sought a "Petition for Ex Parte, Interlocutory and Permanent Injunctive Relief," the court's order indicates only that it ruled upon the Commission's request for an *ex parte* injunction. The court stated that it considered "Plaintiff's Petition for Ex Parte[,] Interlocutory[,] and Permanent Injunctive Relief," but it then said that, because it was "not . . . satisfied that the burden has been shown," "Plaintiff's *ex parte* petition is DENIED." (Italics added; capitalization in original). Court orders are construed in the same manner as other written documents. *Hosain v. Malik,* 108 Md.App. 284, 310–11, 671 A.2d 988 (1996). Moreover, the docket entries state that, on April 25, 1995, an order denying the plaintiff's "*ex parte* petition" was filed. *Cf.* Md. Rule BB73 ("When an application for an *ex parte* injunction has been filed and denied, an order to that effect shall be signed by the court and filed with the clerk.").

In reaching our conclusion as to the scope of the court's ruling, we also consider the circumstances under which the court signed the order. The judge executed the order after a chambers conference conducted on the same day on which the Commission filed its petition—a time frame and meeting place that are consistent with a ruling on an *ex parte* injunction. Furthermore, and most notably, no adversary hearing was ever conducted in open court, and no proceedings took place at which evidence was introduced.

While the court decided only the *ex parte* injunction request, the Commission has not addressed whether the court

erred in denying that request. We need not entertain a challenge to a lower court decision if the appellant does not present a legal argument in support of its position. *Ricker v. Abrams*, 263 Md. 509, 516, 283 A.2d 583 (1971) (point not raised in brief or in argument must be regarded as waived); *Hartford Accident & Indemnity Co. v. Scarlett Harbor Associates Limited Partnership*, 109 Md.App. 217, 288 n. 18, 674 A.2d 106 (1996) (where point of error was stated in question presented, but party presented no argument in support of its position, question could not be considered); *Monumental Life Insurance Co. v. United States Fidelity & Guaranty Co.*, 94 Md.App. 505, 543–44, 617 A.2d 1163, *cert. denied*, 330 Md. 319, 624 A.2d 491 (1993) (where brief did not contain an argument, but merely made reference to an argument contained elsewhere, argument would not be considered); *Jacober v. High Hill Realty, Inc.*, 22 Md.App. 115, 125, 321 A.2d 838, *cert. denied*, 272 Md. 743 (1974) ("We decline to consider the argument as it was not presented in the brief."). In *Layman v. Layman*, 84 Md.App. 183, 578 A.2d 314 (1990), a case in which the appellant did not challenge a critical ruling of the trial court, we said: "A question not presented or argued is waived and not preserved for review. . . . Our function does not include scouring the record for error once a party notes an appeal and files a brief." *Id.* at 191, 578 A.2d 314 (citations omitted).

In this case, appellant seemingly challenges an order that the lower court did not make, but has failed to challenge the order that the court did enter. In addition, because there is no transcript of the chambers conference, we cannot determine whether the contentions that the Commission has presented here were also raised below. *See* Md. Rule 8–131(a) ("Ordinarily, the appellate court will not decide any . . . issue unless it *plainly appears* by the record to have been raised in or decided by the trial court."). Accordingly, for this reason, we decline to address whether the trial court properly denied the ex parte injunction.

The circuit court's denial of the *ex parte* injunction leaves unresolved the Commission's requests for interlocutory and

final injunctions. As this case presents several issues of first impression, we shall exercise our discretion and address these issues for the guidance of the court on remand.

The central issue concerns the request to enjoin Downey's threats to sue Walters and the prosecution of a suit against Walters.[8] It is well settled that an injunction to restrain the prosecution of a lawsuit is permissible. *See, e.g., Michael v. Rigler*, 142 Md. 125, 120 A. 382 (1923); *Calwell v. Rogers*, 127 Md. 291, 96 A. 433 (1915). Such an injunction

> is utilized to prevent [a party] from using the process of courts of law where it would be contrary to good conscience to allow the party, or parties, to proceed. This class of injunctive relief is based upon the ground that some unfair advantage is being obtained, or has been obtained, in the law court, which, under the circumstances, equity, alone, can prevent from becoming effective.

*Kardy v. Shook*, 237 Md. 524, 532–33, 207 A.2d 83 (1965). *See also Methodist Protestant Church v. Mayor and City Council of Baltimore*, 6 Gill 391, 402 (Md.1848) (injunction will be issued where the equity court is "prompted by conscience to prevent wrong and injustice" perpetrated by the maintenance of the other suit). *See generally* 42 Am. Jur. 2d *Injunctions* § 204 (1969). A court will not enjoin a lawsuit, however, simply to prevent the multiplicity of suits, without regard to other considerations. *Peninsula Construction Co. v. Merritt*, 90 Md. 589, 591, 45 A. 172 (1900).

In considering a request to enjoin a lawsuit, a court must consider whether the suit is contrary to equity and good conscience, or if it provides an "unfair advantage." *See Kardy v. Shook, supra*, 237 Md. at 533, 207 A.2d 83. A court must also consider if an injunction is needed "to prevent the

---

8. With respect to an employer's "threats", our analysis concerns only an employer's threats to file suit, because this is the only "threat" against Walters that the Commission has alleged. The Commission has not alleged other types of threatening conduct, such as threats of bodily injury, harassing telephone calls, stalking, etc. Therefore, we do not pass upon the propriety of an injunction if those types of threats occur.

making of an unfair use of a court of law in order to deprive another party of his just rights or subject him to some unjust vexation or injury." 42 Am. Jur. 2d *Injunctions, supra,* § 204.

We recognize, however, that the grant or denial of an injunction lies within the sound discretion of the circuit court, *see Fantasy Valley Resort, Inc. v. Gaylord Fuel Corp.,* 92 Md.App. 267, 272, 607 A.2d 584, *cert. denied* 328 Md. 237, 614 A.2d 83 (1992), and that the court's decision will not be disturbed on appeal absent a showing of an abuse of discretion. *See Scott v. Seek Lane Venture, Inc.,* 91 Md.App. 668, 694, 605 A.2d 942, *cert. denied,* 327 Md. 626, 612 A.2d 257 (1992). "Nevertheless, even with respect to a discretionary matter, a trial court must exercise its discretion in accordance with correct legal standards." *Alston v. Alston,* 331 Md. 496, 504, 629 A.2d 70 (1993).

## III.

In analyzing the Commission's injunction request, the parties debate the applicability of two subsections in Article 49B that seem to conflict. The Commission relies on the "anti-retaliation provision" of FEPA, codified at Article 49B, § 16(f), to support its claim that it was entitled to an injunction to preclude Downey from filing suit or otherwise retaliating against Walters. Section 16(f) states:

It is an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subtitle or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subtitle.

Downey, on the other hand, relies on Article 49B, § 12(b) to support its contention that it had the right to sue Walters for her "baseless" claim, even during the course of the Commission's investigation. Section 12(b)(1) makes the malicious

filing of a false discrimination charge a misdemeanor under some circumstances. It provides in part:

> Any person (including one acting for or on behalf of a firm, association, or corporation) is guilty of a misdemeanor if:
>
> (i) He has claimed to be aggrieved under the provisions of this subtitle;
>
> (ii) He has pursued the complaint under this section and § 11 of this subtitle, or either of these sections;
>
> (iii) The Commission has found the complaint to be unfounded or has dismissed it without further action against the respondent; and
>
> (iv) The court has found the complaint to have been made maliciously....

In addition, § 12(b)(2) provides: "This subsection shall not be construed or applied to deny the right of a respondent to bring any civil action against one who has filed a complaint under this subtitle."

In order to determine if Downey may be enjoined, we must analyze whether Downey is entitled to sue Walters while the Commission's investigation is in progress and before the Commission reaches its "final disposition." We must also address whether, based on § 16(f) of FEPA, the Commission may seek to enjoin Downey *permanently* from suing Walters, even after the agency process is completed. As we see it, this question concerns the Commission's pursuit of an adjudication, outside of the statutorily prescribed FEPA enforcement process, that Downey has violated § 16(f). We address each of these questions in turn.

## A.

Downey allegedly seeks to adjudicate in Virginia at least some issues that were the subject of the Commission's investigation. The Commission claims that Downey's earlier threats and its subsequent lawsuit violate the public policy embodied in Article 49B, § 16(f). Arguably, Downey's conduct had the purpose or effect of impeding and circumventing the agency's investigatory and adjudicatory roles. Therefore, the Commis-

sion sought interlocutory and permanent injunctive relief, relying, *inter alia,* on Article 49B, § 4. Section 4 provides: "At any time after a complaint has been filed, if the Commission believes that appropriate civil action is necessary to preserve the status of the parties or to prevent irreparable harm *from the time the complaint is filed until the time of its final disposition,* the Commission may bring [an] action to obtain a temporary injunction" (Emphasis supplied).

The Commission, as an administrative agency, is charged with investigating Walters's employment discrimination claim against Downey.[9] Because the manner in which the Commission functions is important to our analysis, we shall review briefly the FEPA statutory scheme. Article 49B, § 10(a) provides:

> After the filing of any complaint, the Executive Director shall consider the complaint and shall refer it to the Commission's staff for prompt investigation and ascertainment of the facts. The results of the investigation shall be made as written findings. A copy of the findings shall be furnished to the complainant and to the person, firm, association, partnership or corporation (hereinafter referred to as the "respondent") against whom or which the complaint is made.

We stated in *Parlato v. State Commission on Human Relations, supra,* 76 Md.App. at 702, 548 A.2d 144, that "[t]he Commission investigation is conducted to protect the respondent against frivolous charges by 'insur[ing] the reliability of the information in the complaint.'" (Quoting *Gee v. Mass Transit Administration,* 75 Md.App. 253, 261–62, 540 A.2d 1194 (1988)). Moreover, "'the investigative process [was designed to] flesh out the charges made by the individual before the respondent was called upon to answer them.'" *Parlato,* 76 Md.App. at 702, 548 A.2d 144 (quoting *Banach v. State Commission on Human Relations,* 277 Md. 502, 514, 356 A.2d 242 (1976)).

---

9. We observe that FEPA only applies to employers with fifteen or more employees. *See* Article 49B, § 15(b).

Section 10(b) instructs the Commission that, if it finds "prob'able cause" for believing that a discriminatory act has occurred, it "immediately shall endeavor to eliminate the discrimination by conference, conciliation, and persuasion." The procedure to conduct hearings in the absence of an agreement to eliminate the acts of discrimination is set out in § 11(a).[10] "Only after [conciliation] efforts have failed do the charges of discrimination become formal, triggering the employer's right to notice and a public hearing under § 11." *Parlato,* 76 Md.App. at 702, 548 A.2d 144. Section 11(e) provides for the issuance of cease-and-desist orders by the hearing examiner. Section 11(g) provides further that, "[i]f upon all the evidence, the hearing examiner or the Commission finds that the respondent has not engaged in any alleged discriminatory act within the scope of the particular subtitle, it shall state its findings of fact and shall similarly issue and file an order dismissing the complaint." .

The respondent has the right to seek judicial review of an adverse decision issued by the hearing examiner pursuant to the Administrative Procedure Act. *See* Maryland Code, § 10–222(a)(1) of the State Government Article (1984, 1996 Repl. Vol.). *See also Kohli v. LOOC, Inc.,* 103 Md.App. 694, 712–13, 654 A.2d 922 (1995); *Maryland Commission on Human Relations v. Mayor & City Council of Baltimore,* 86 Md.App. 167, 586 A.2d 37, *cert. denied,* 323 Md. 309, 593 A.2d 668 (1991)

---

10. Section 11(a) provides:

*Certification of file; notice to respondent; place of hearing; transcript; duty of Commission's counsel.*-In case of failure to reach an agreement for the elimination of the acts of discrimination and upon the entry of findings to that effect, the entire file including the complaint and any and all findings made shall be certified to [sic]. The Chairman shall cause a written notice to be issued and served in the name of the Commission together with a copy of the complaint requiring the respondent to answer the charges of the complaint at a public hearing before a hearing examiner at a time and place certified in the notice.

The case shall thereupon be heard by a hearing examiner and the hearing shall be held in the county where the alleged act of discrimination took place. A transcript of all testimony at the hearing shall be made. The case in support of the complaint shall be presented at the hearing by the general counsel of the Commission.

(reviewing the decision of the Commission's Appeal Board under the Administrative Procedure Act standard). In addition, if a respondent fails to comply with a Commission order, § 12(a) provides a mechanism by which the Commission may seek judicial enforcement of its order. The enforcement procedure entitles a respondent to obtain judicial review of a Commission order. Section 12(a) states:

> If any respondent refuses to comply with an order of the Commission made within the scope of any of these subtitles, the Commission may, represented by its general counsel, institute litigation in the appropriate equity court of the county or in Baltimore City where the alleged discrimination took place to enforce compliance with any of the provisions of this article.

> The court, in hearing said case, shall be governed by the judicial review standards as set forth in the Administrative Procedure Act, Title 10, Subtitle 2 of the State Government Article of the Annotated Code of Maryland.

The foregoing discussion makes clear that FEPA provides a carefully crafted mechanism for the investigation and resolution of employment discrimination claims, including judicial review of a decision unfavorable to the employer. It includes an express statutory authorization to the Commission to seek a *temporary* injunction.

We are of the view that, in the context of the FEPA statutory scheme, the court may rely on Article 49B, § 4 to enjoin a lawsuit that involves substantially the same issues that are under consideration by the agency. The administrative process would come to a standstill if parties that are the subject of agency investigations could file parallel lawsuits seeking to adjudicate an issue that is before the agency. As a matter of administrative law, and as a matter of equity, a government agency needs to be able to do its work. There would scarcely be a purpose for an agency, such as the Commission, if a party involved in a proceeding before the agency could make an "end run" around it by obtaining judicial adjudication of the same issues that are then pending

before the agency. Indeed, such a lawsuit may have the purpose or effect of avoiding or obstructing the agency's pending investigation or adjudication.

In applying § 4, the circuit court should consider whether the issues involved in the lawsuit are substantially the same as those pending before the agency. The circuit court should also employ the common law equitable principles pertaining to injunctions against lawsuits, which we outlined earlier. If the court determines that Downey's suit will impede the agency's investigatory or adjudicatory functions, has been filed to achieve an unfair advantage, or that it constitutes, *inter alia*, a gross wrong or vexatious conduct, and that equity and good conscience demand that the suit be halted in order to prevent irreparable harm, or that the suit involves substantially the same issues that are before the agency, then it should enjoin the suit until the agencies have finally disposed of Walters's case. *See Kardy v. Shook, supra,* 237 Md. at 532–33, 207 A.2d 83; *Methodist Protestant Church v. Mayor and City Council of Baltimore, supra,* 6 Gill at 402, 42 Am.Jur.2d, *supra, Injunctions* § 204.

In reaching our conclusion that the circuit court may enjoin a lawsuit that involves substantially the same issues pending before the agency, we are guided by the conceptual underpinnings of the exhaustion of administrative remedies doctrine. It is a longstanding principle of administrative law that one must exhaust statutorily prescribed administrative remedies before resorting to the courts.[11] *See McCullough v. Wittner,* 314 Md. 602, 552 A.2d 881 (1989); *Maryland Commission on Human Relations v. Baltimore*

---

11. Although the Commission has not argued the principles pertaining to exhaustion of administrative remedies, the failure to exhaust administrative remedies is sometimes treated like a jurisdictional issue. Therefore, it may be raised for the first time on appeal or by the appellate court *sua sponte. See Maryland–National Capital Park and Planning Commission v. Crawford,* 307 Md. 1, 15 n. 5, 511 A.2d 1079 (1986); *Prince George's County v. Blumberg,* 288 Md. 275, 288 n. 9, 418 A.2d 1155 (1980), *cert. denied,* 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981).

*Gas & Electric,* 296 Md. 46, 50, 459 A.2d 205 (1983); *Harbor Island Marina, Inc. v. Board of County Commissioners of Calvert County,* 286 Md. 303, 308, 407 A.2d 738 (1979); *State Department of Assessments and Taxation v. Clark,* 281 Md. 385, 401, 380 A.2d 28 (1977). Therefore, a litigant must first pursue the applicable administrative process; other remedies cannot be pursued prematurely. *Schneider v. Pullen,* 198 Md. 64, 68, 81 A.2d 226 (1951); *Landover Books, Inc. v. Prince George's County,* 81 Md.App. 54, 62, 566 A.2d 792 (1989).[12]

In *McKart v. United States,* 395 U.S. 185, 195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969), the Supreme Court said that one of the purposes of the exhaustion doctrine is to prevent the possibility "that frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures." *See also McGee v. United States,* 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971) (in criminal prosecution for draft evasion, exhaustion doctrine applied to prevent defendant from raising the defense that he was a conscientious objector, because he had not pursued that contention before the Selective Service Board). Walters is thus entitled to pursue the course of administrative proceedings that she elected to initiate. To the extent it has asserted substantially similar issues in the Virginia suit, Downey's action would have the effect of derailing that process.

▪ Our views are also a corollary of the doctrine that judicial review of an administrative order is generally available only when that order is "final," meaning that there must be nothing further for the agency to do. *See Holiday Spas v. Montgomery County Human Relations Commission,* 315 Md. 390, 395, 554 A.2d 1197 (1989); *Celanese Corp. of America v. Bartlett,* 200 Md. 397, 409, 90 A.2d 208 (1952); *Crofton Partners v. Anne Arundel County,* 99 Md.App. 233, 243, 636 A.2d

12. We recognize, of course, that Downey is not in the posture of a claimant in connection with the administrative proceedings. In its usual operation, the exhaustion of administrative remedies doctrine applies to suits that a court *dismisses* because the *plaintiff* or complainant has not exhausted administrative remedies.

487, *cert. denied,* 335 Md. 81, 642 A.2d 192 (1994); *General Motors Corp. v. Public Service Commission of Maryland,* 87 Md.App. 321, 337, 589 A.2d 982 (1991). The "exhaustion" and "finality" requirements both share the common goal of preventing potentially unnecessary and premature disruption by the courts of the activities of administrative agencies. As we stated in *Boyd v. Supervisor of Assessments of Baltimore City,* 57 Md.App. 603, 471 A.2d 749 (1984):

> The purposes of the doctrine of exhaustion of administrative remedies are threefold. It is designed to encourage the determination of particular issues by agencies with special expertise as to those issues; to avoid the judicial resolution of matters the legislature thought could be best performed by an agency; and to keep from the courts matters they might never be called upon to decide if the prescribed administrative remedy was followed.

*Id.,* 57 Md.App. at 606, 471 A.2d 749 (quotations omitted). *See also Gingell v. Board of County Commissioners for Prince George's County,* 249 Md. 374, 376–77, 239 A.2d 903 (1968) (listing the reasons for the exhaustion doctrine).

▮▮▮▮▮ Further support for our view may be found in the concept of "primary jurisdiction," which is closely related to the exhaustion doctrine. "The doctrine of primary jurisdiction is a judicially created rule designed to coordinate the allocation of functions between courts and administrative bodies." *Anne Arundel County v.2020C West Street, Inc.,* 104 Md.App. 320, 332, 656 A.2d 341, *cert. denied,* 339 Md. 166, 661 A.2d 700 (1995), *disapproved on other grounds, Insurance Commissioner of the State of Maryland v. Equitable Life Assurance Society of the United States,* 339 Md. 596, 624–25 n. 12, 664 A.2d 862 (1995). It " 'comes into play when a court and agency have [initial] concurrent jurisdiction over the same matter and there is no statutory provision to coordinate the work of the court with that of the agency.' " *Bits N Bytes Computer Supplies, Inc. v. Chesapeake & Potomac Telephone Co. of Maryland,* 97 Md.App. 557, 574, 631 A.2d 485 (1993), *cert. denied,* 333 Md. 385, 635 A.2d 425 (1994) (quoting *Maryland–National Capital Park & Planning Commission,* 282

Md. at 601, 386 A.2d 1216) (emphasis omitted). This concept provides that " 'where the claim is initially cognizable in the courts but raises issues or relates to subject matter falling within the special expertise of an administrative agency,' courts should defer to the expertise of the agency." *Consumer Protection Div. v. Luskin's, Inc.,* 100 Md.App. 104, 113, 640 A.2d 217 (1994), *aff'd,* 338 Md. 188, 657 A.2d 788 (1995) (quoting *Maryland–National Capital Park & Planning Commission v. Washington National Arena,* 282 Md. 588, 602, 386 A.2d 1216 (1978)). Primary jurisdiction does not apply where "the legal issue [does] not involve an interpretation of a law administered by the agency." *Board of Education for Dorchester County v. Hubbard,* 305 Md. 774, 791, 506 A.2d 625 (1986). In the case at bar, the issue before the Commission is whether appellee violated FEPA, which is, of course, the precise statute that the Commission is charged with administering.

Case law also supports our conclusion that, while the complaint is pending before the agency, an employer may be enjoined from litigating an issue that bears materially on the matter under agency review. In *Soley v. State of Maryland Commission on Human Relations,* 277 Md. 521, 356 A.2d 254 (1976), the Court affirmed the dismissal of a declaratory judgment action brought by two apartment owners against whom the Commission had issued housing discrimination complaints. The owners had asked that the complaints be declared "illegal and invalid." Citing the provision of Article 49B pertaining to the enforcement and review of Commission orders, the Court held that the owners needed to exhaust their administrative remedies.

> [T]he investigation being conducted by the commission staff may fail to produce any support for the allegations contained in the commission complaint, and therefore warrant a dismissal without resort to further proceedings. Or, should probable cause be found, a disposition may be reached by conciliation. But if the quasi-judicial hearing stage is reached, appellants will receive the protection of the various rights granted them by § 14 [now § 11 of Article

49B] as well as those guaranteed by the Federal and State Constitutions. This case, therefore, amply demonstrates the soundness of the rule requiring exhaustion of administrative and statutory remedies by one seeking declaratory relief.

*Id.,* 277 Md. at 526–27, 356 A.2d 254.

The Court also rejected the owners' contention that they were not required to exhaust administrative remedies because they had alleged that the Commission's acts were "ultra vires" or "illegal." The Court stated: "We find no authority ... for the proposition that there need be no exhaustion of a statutory or administrative remedy where the act of an administrative agency is alleged to be ultra vires or illegal." *Id.,* 277 Md. at 528, 356 A.2d 254.

Similarly, in *Maryland Commission on Human Relations v. Mass Transit Administration,* 294 Md. 225, 449 A.2d 385 (1982), the Court held that the lower court should have dismissed an employer's declaratory judgment action because of the employer's failure to exhaust administrative remedies with the Commission. Three claimants filed charges with the Commission, alleging that the M.T.A. had denied them employment because they were overweight or obese. The claimants alleged that overweight or obesity was a handicap, and that the M.T.A. had refused to hire them because of their "physical or mental handicap unrelated in nature and extent so as to reasonably preclude the performance of the employment," in violation of Article 49B, § 16(a)(1). Conciliation was unsuccessful, and the Commission set the matter for a hearing before a hearing examiner.

The M.T.A. then instituted a declaratory judgment action in the circuit court, seeking a determination that being overweight or obese was not a "physical handicap" within the meaning of § 16(a)(1), and that the Commission was without authority to proceed. The Court held that the action should have been dismissed for failure to exhaust administrative remedies, rejecting the M.T.A.'s contention that the exhaustion doctrine did not apply when the issue was one of statutory

interpretation. *Id.* at 233–35, 449 A.2d 385. The Court said: "Under our decisions, the question of the extent, if any, that obesity may be a 'physical or mental handicap' within the meaning of the employment discrimination laws, is the type of issue which, if arising in a contested administrative proceeding, should await final agency decision prior to judicial resolution." *Id.,* 294 Md. at 235, 449 A.2d 385.

The Court of Appeals's decision in *Maryland–National Capital Park and Planning Commission v. Crawford,* 307 Md. 1, 511 A.2d 1079 (1986), does not alter our conclusion. There, the Court held "that where an employee has a specific contractual or statutory cause of action for a claim of employment discrimination, independent of Art. 49B, Maryland law does not require that the employee, as a condition for maintaining the independent judicial action, first invoke the procedures before the Human Relations Commission." *Id.,* 307 Md. at 30–31, 511 A.2d 1079. But the Court also noted that a plaintiff asserting a claim predicated wholly on FEPA must first exhaust administrative remedies before bringing the claim to court. The Court said: "[W]here a plaintiff's claim is grounded entirely upon the provisions of Art. 49B, the Human Relations Commission has primary jurisdiction, and the plaintiff ordinarily must invoke and exhaust his administrative remedy before maintaining an action in court." *Id.,* 307 Md. at 25 n. 10, 511 A.2d 1079. *See Dillon v. Great Atlantic and Pacific Tea Co.,* 43 Md.App. 161, 163, 166–67, 403 A.2d 406 (1979) (no common law cause of action for employment discrimination; FEPA does not establish private cause of action).

Certainly, one could argue, based on *Crawford,* that the employer, who is in the posture of a defendant before the agency, should likewise be able to pursue an "independent judicial claim" without regard to whether the complainant has exhausted his or her administrative remedies. Indeed, the *Crawford* Court noted the "non-exclusive nature of the Human Relations Commission's jurisdiction." 307 Md. at 26, 511 A.2d 1079. In *Crawford,* however, there was no ongoing Commission investigation with which the employee's claim would interfere; the complainant filed a federal civil rights action

under 42 U.S.C. § 1983 after initiating an internal grievance within the agency that employed her, but without resorting to the Commission. It is also noteworthy that the Court found that the complainant *had* fully exhausted any administrative remedies that she was required to pursue within the Park and Planning Commission itself. The *Crawford* Court stated, however, that "where a plaintiff having an independent judicial remedy also elects to file a claim with the Commission on Human Relations, a court should require that the plaintiff exhaust his Commission remedies before the court addresses the merits of the independent action." *Id.*, 307 Md. at 31 n. 14, 511 A.2d 1079. Moreover, the Court made clear that its "holding does not authorize a plaintiff to bypass the Human Relations Commission's procedures by bringing a declaratory judgment action or invoking the general equity power of a court." *Id.* ·

■ Nor does Article 49B, § 12(b)(2) alter our conclusion. Section 12(b)(2) provides that "[t]his subsection" does not preclude the respondent from filing a civil action against a complainant. It makes no specific reference as to when such an action may be brought, however. Read in context, it follows § 12(b)(1), which makes it a criminal offense to file false charges of discriminatory conduct. In order for the complainant to have violated § 12(b)(1), the Commission must determine that the complainant filed a complaint that is "unfounded" or, alternatively, the Commission must have dismissed the complaint "without further action." § 12(b)(1)(iii). Thus, a natural reading of § 12(b), as a whole, suggests that a civil cause of action based on false accusations, while not barred by § 12(b)(2), may not be pursued unless the Commission has dismissed the complainant's charge or determined that it was unfounded. Therefore, to the extent that an employer may pursue an action of the type contemplated by § 12(b)(2), it may do so only after the Commission dismisses the complaint, deems it unfounded, or, logically, if the agency matter is otherwise completed.

It is also no answer for an employer to claim, as Downey vigorously does here, that it is entitled to pursue the Virginia suit because the claim against it is "groundless." In *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938), the National Labor Relations Board issued an unfair labor practice complaint against Bethlehem. Bethlehem promptly sought an injunction against the individual members of the Board to enjoin them from holding a hearing in reference to the complaint or taking any further action on the complaint. Bethlehem contended that its operations were not within interstate commerce, and that therefore it was beyond the purview of the National Labor Relations Act. 303 U.S. at 47, 58 S.Ct. at 461–62.

The Supreme Court held that the federal district court had no jurisdiction to issue the injunction, because Bethlehem needed to exhaust its administrative remedies. The Court pointed out that Congress had explicitly stated that the Board's power to prevent unfair labor practices was "exclusive." 303 U.S. at 50, 58 S.Ct. at 463. Although the Court conceded that "the Board has jurisdiction only if the complaint concerns interstate or foreign commerce," 303 U.S. at 49, 58 S.Ct. at 463, it concluded that the nature of Bethlehem's operations was a matter that the corporation had to present to the Board. Justice Brandeis wrote for the Court:

The corporation contends that, since it denies that interstate or foreign commerce is involved and claims that a hearing would subject it to irreparable damage, rights guaranteed by the Federal Constitution will be denied unless it is held that the District Court has jurisdiction to enjoin the holding of a hearing by the Board. So to hold would, as the government insists, in effect substitute the District Court for the Board as the tribunal to hear and determine what Congress declared the Board exclusively should hear and determine in the first instance. The contention is at war with the long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.

303 U.S. at 50–51, 58 S.Ct. at 463 (footnotes omitted). Justice Brandeis then added:

> Obviously, the rule requiring exhaustion of the administrative remedy cannot be circumvented by asserting that the charge on which the complaint rests is groundless and that the mere holding of the prescribed administrative hearing would result in irreparable damage. Lawsuits also often prove to have been groundless; but no way has been discovered of relieving a defendant from the necessity of a trial to establish the fact.

303 U.S. at 51–52, 58 S.Ct. at 464 (footnote omitted).

Here, Downey claims that it is a victim of "mistaken identity," because the alleged discriminatory acts were committed by MMI. On the other hand, Walters contends that the two corporations are *alter egos* of one another. Nothing prevents Downey from defending itself against this claim before the agency.[13] The agency may determine that MMI made the offer in question and that Downey and MMI are separate entities, or that Walters was not a victim of discrimination. At a minimum, the agency needs an opportunity to resolve these and other questions.

In sum, the court may enjoin Downey from circumventing the administrative remedies; it may bar Downey from pursuing a collateral lawsuit whose outcome will hinge on the same issues that are before the agency. Nor should Downey be permitted to employ the courts to coerce a complainant to drop her charge and thus halt a lawful agency investigation. Therefore, we conclude that the institution or prosecution of a lawsuit that involves substantially the same issues that are pending before the Commission or the EEOC constitutes a wrong that may be temporarily enjoined, pursuant to Article 49B, § 4. Downey's lawsuit will have to await the completion

---

**13.** We express *no view on the validity of the Commission's theory* that the actions of MMI may be imputed to Downey on the ground that the two companies are "integrated businesses."

of the statutorily mandated agency process.[14]

 We hasten to add that the principle that agency procedures must not be bypassed prohibits only those lawsuits that involve substantially the same issues that are before the agency. If the lawsuit addresses a matter that is wholly unrelated to the agency's investigation, and the lawsuit is not otherwise unlawful or enjoinable, then the employer need not await completion of the agency's investigation or adjudication before pursuing the claim, because the agency will not address that issue. Moreover, the employer may pursue such claims even if there is some factual overlap between these claims and

---

14. Given the procedural posture of this case, we decline to consider whether any suit that Downey may file later would be barred by res judicata or collateral estoppel. *See Batson v. Shiflett,* 325 Md. 684, 701–05, 602 A.2d 1191 (1992) (agency findings made in course of proceedings that are judicial in nature should be given same preclusive effect, under doctrines of res judicata or collateral estoppel, as findings made by a court); *Sugarloaf Citizens Association v. Northeast Maryland Waste Disposal Authority,* 323 Md. 641, 658–59 n. 13, 594 A.2d 1115 (1991) (agency determinations at a "nontrial" type of hearing would not be given preclusive effect); *Mayor and Aldermen of the City of Annapolis v. Shearwater Sailing Club, Inc.,* 265 Md. 280, 285, 288 A.2d 887 (1972) ("Where a statute establishes a fact-finding body or commission and it has jurisdiction over the parties and the subject matter[,] its decisions on questions of fact are conclusive and final in the absence of fraud, unless an appeal is provided by law to some appellate or supervisory tribunal."); *Department of Human Resources v. Thompson,* 103 Md.App. 175, 195–96, 652 A.2d 1183 (1995) (whether agency's declarations should be given collateral estoppel effect depends upon whether agency was acting in judicial capacity, issue presented to court was actually litigated before the agency, and resolution of issue was necessary to the agency's decision). *Cf. Department of Health & Mental Hygiene v. Reeders Memorial Home, Inc.,* 86 Md.App. 447, 455, 586 A.2d 1295 (1991) (appeal board not bound, by res judicata, to its previous interpretation of regulations, when previous interpretation was based on an error of law); *R & T Construction Co. v. Judge,* 82 Md.App. 700, 725–26, 573 A.2d 96 (1990), *aff'd in part and rev'd in part on other grounds,* 323 Md. 514, 594 A.2d 99 (1991) (finding of Virginia Industrial Commission not entitled to preclusive effect in Maryland Workers' Compensation Commission, when Virginia commission only interpreted Virginia statute and did not make findings of fact); *Klein v. Colonial Pipeline Co.,* 55 Md.App. 324, 339, 462 A.2d 546 (1983) (doctrine of res judicata does not apply to administrative proceedings as an inflexible rule of law, particularly where administrative agency's original decision was based on an error of law).

the issues before the agency. *See Maryland–National Capital Park and Planning Commission v. Crawford, supra,* 307 Md. at 22–31, 511 A.2d 1079 (employee with a specific contractual or statutory cause of action for claim of employment discrimination, independent of FEPA, need not first invoke the procedures before the Commission).

■ We do not intend to foreclose an employer from filing suit in order to avoid irreversible harm, such as the impending loss of important evidence. *Cf. Crawford,* 307 Md. at 17, 511 A.2d 1079 ("A court may exercise jurisdiction and grant preliminary relief pending final administrative action in order to prevent destruction of records or other irreparable injury."). In addition, an employer may need to file suit to avoid the bar of the statute of limitations; a claim for defamation, for example, has only a one year limitations period, *see* Maryland Code, § 5–105 of the Courts and Judicial Proceedings Article (1974, 1995 Repl. Vol.), and the agency's investigation may not necessarily be completed before the expiration of the statute of limitations. But we know of no reason, in this circumstance, why the employer could not file its suit, along with a motion to stay the proceedings. This practice would protect the employer's claim from the bar of limitations while avoiding circumvention of the agency's statutorily authorized investigatory and adjudicatory functions.

■ Moreover, if the agency fails to act within an appropriate time, the party adversely affected may be entitled to pursue an action for mandamus. *See Lake Station v. State,* 558 N.E.2d 824, 828 (Ind.1990) ("When a governmental entity will not act, resort to the courts is appropriate."); *Weltz v. Board of Education of Scotland School District,* 329 N.W.2d 131, 132–33 n. 1 (S.D.1983) (exhaustion not required where agency fails to act). *Cf. Gianforte v. Board of License Commissioners for Baltimore City,* 190 Md. 492, 498–99, 58 A.2d 902 (1948) (courts have inherent power through mandamus, injunction, or otherwise to correct administrative abuses of discretion or illegal, capricious, or arbitrary acts by adminis-

trative bodies, although the courts cannot interfere with the agency's exercise of sound discretion).

The parties have not provided us with a copy of the complaint that Downey filed against Walters in the Virginia court. We are, therefore, unable to review the precise allegations or the causes of action. It appears from the parties' arguments, however, that one count of the complaint is either for malicious prosecution or abuse of process, and the other count is for breach of contract. The first count, according to the Commission, alleges that Walters unlawfully maintained a sex discrimination complaint against Downey while she knew that the actions complained of were committed by MMI. The second count, according to Downey, alleges that Walters breached a settlement agreement that she and Downey executed in 1994. Because of the scantiness of the record, and the fact that no hearing on the Commission's request for an interlocutory or final injunction has yet taken place, our discussion here has been for the guidance of the court. On remand, the circuit court should examine Downey's suit and make a threshold determination of whether the claims asserted in the suit involve the same issues that are presently before the Commission or the EEOC.[15]

We emphasize that the question is not how Downey's claims in its lawsuit are labelled. Rather, the question is whether the suit seeks to adjudicate *issues* that are identical or virtually identical to the ones that are before the agency. If a claim in the lawsuit involves the same issues that are presently before the agency, then the court should enjoin Downey from prosecuting the claim until the agency has finally disposed of the matter. "Final disposition" refers to the point when agency procedures are at an end. With respect to a matter before the Commission, this means that either (1) the Commission has found no probable cause for Walters's charge, or has

---

**15.** If it is true that the breach of contract claim alleges that Walters breached a settlement agreement, the transaction from which this claim would arise is probably distinct from the issues under investigation by the agency.

otherwise terminated its investigation, or (2) the hearing officer and, if applicable, the Commission's Appeal Board, have rendered their decisions.[16] With respect to a matter before the EEOC, this means that either (1) the agency has filed suit on behalf of Walters in federal district court, (2) the agency has completed its investigation and sent Walters a "right-to-sue notice," or (3) Walters has requested and received a "right-to-sue notice." [17]

## B.

We next consider the issue of whether the Commission may obtain a permanent injunction to bar Downey from ever pursuing its lawsuit against Walters. The Commission contends that it may do so, because such a suit violates FEPA's anti-retaliation provision, Article 49B, § 16(f).[18]

---

16. While the parties may be entitled to judicial review, we are satisfied that an employer need not await the result of those proceedings for purposes of its right to pursue its claims.

17. Under the federal anti-employment discrimination scheme, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, once a charge is filed with the EEOC, and after any "deferral period" to state enforcement agencies, the EEOC has exclusive jurisdiction over the charge for 180 days. After thirty days from the filing of the charge, the EEOC has the right to file suit on behalf of the complainant in federal district court. *See* 42 U.S.C. § 2000e–5(f). If the EEOC completes its investigation but decides not to file suit for any reason, it will issue a "right-to-sue notice" to the complainant, authorizing the complainant to file his or her own civil action. *See id.* If more than 180 days have elapsed since the filing of the charge, and the EEOC has not filed suit or issued a right-to-sue notice, the complainant may demand a right-to-sue notice and, upon receiving it, may file suit. *See id.*

18. The issue of whether an employer lawsuit against a complainant violates the anti-retaliation provisions of social legislation has appeared in several federal court cases.

Two reported federal district court decisions have addressed the issue in the context of 42 U.S.C. § 2000e–3(a), the Title VII analogue to Article 49B, § 16(f). These courts have decided that a retaliatory defamation suit based on the employee's statements in an EEOC charge form is unlawful, *see EEOC v. Virginia Carolina Veneer Corp.*, 495 F.Supp. 775 (W.D.Va.1980), *appeal dismissed*, 652 F.2d 380 (4th Cir. 1981), but a defamation suit based on the employee's statements *to other employees*, and which is filed in a good faith effort to vindicate the

At the outset, we observe that we cannot determine with certainty whether the Commission argued in the circuit court, or even in this Court, that Downey should be permanently restrained from prosecuting its suit. The Commission's petition for injunctive relief indicates that it wanted Downey enjoined, permanently, "from taking any further actions against Ms. Walters ... in retaliation for her pursuing a complaint with the Commission." But the final sentence of the memorandum that the Commission filed in support of its petition (which the parties did not place in their joint record extract) stated that the court "should enjoin [Downey] from threatening the Complainant, Ms. Sykes or any other person in connection with the investigation of this matter or any ancillary proceedings in connection thereto *until such time as the Commission reaches final disposition on this matter.*" (Emphasis supplied). Nor is it apparent that the Commission was "pleading in the alternative." *See* Md. Rule 2–303(c).

This lack of clarity continues in the Commission's submission to this Court. In some parts of its brief, including its questions presented, and particularly in its reply brief, the Commission appears to contend that it wants Downey enjoined from pursuing its lawsuit against Walters, during the pendency of its investigation and indefinitely thereafter. The

employer's reputation, is not unlawful, *see EEOC v. Levi Strauss & Co.*, 515 F.Supp. 640, 644 (N.D.Ill.1981). In addition, the seminal decision on 42 U.S.C. § 2000e–3(a), *Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998 (5th Cir.1969), which held that an employer may not retributively *discharge* an employee for filing charges with the EEOC, even if the charges were false and malicious, stated in *dicta:* "We in no way imply that an employer is preempted by [42 U.S.C. § 2000e–3(a) ] from vindicating his reputation through resort to a civil action for malicious defamation." *Id.,* 411 F.2d at 1007 n. 22.

In 1983, however, the Supreme Court signaled a change in the law in its decision in *Bill Johnson's Restaurants, Inc. v. National Labor Relations Board,* 461 U.S. 731, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983), which involved the anti-retaliation provisions of the federal National Labor Relations Act. The Court held that a retaliatory motive was not sufficient for an employer's lawsuit to constitute unlawful retaliation. Instead, the National Labor Relations Board had to find that the lawsuit was both (1) retaliatory *and* (2) lacked a "reasonable basis" in fact or law. *Id.,* 461 U.S. at 748, 103 S.Ct. at 2172–73.

Commission cites § 16(f), contending that Downey's suit is an unlawful, "discriminatory" act that is enjoinable under that provision. In other portions of its brief, however, the Commission suggests only that Downey should be restrained from pursuing its claims against Walters until the Commission has reached "final disposition" of the case. The Commission states, for example:

> Downey has never articulated any real meaningful harm that it would have sustained had the circuit court issued the injunction sought by the Commission. The only thing that Downey would have been precluded from doing was continuing to threaten to sue and/or suing Walters, *at least* from the time the complaint was filed until the time of its final disposition.

(Emphasis supplied).

Regardless of what the Commission argues, we conclude that, on the basis of an alleged violation of § 16(f), the Commission is not entitled to file suit in the circuit court to obtain a final injunction permanently restraining Downey from prosecuting a civil action. This is because the enforcement process established by FEPA is the exclusive means by which the merits of an alleged violation of § 16(f) may be adjudicated; [19] this process does not authorize direct civil actions by the Commission in circuit court.[20] We explain.

It is well settled that the list of "unlawful employment practices" enumerated in Article 49B, § 16 does not create causes of action. *See Dillon v. Great Atlantic and Pacific Tea Co., supra,* 43 Md.App. at 163, 166–67, 403 A.2d 406 (no common law cause of action for employment discrimination;

---

19. Our focus is limited to an injunction request based on FEPA; we do not address a situation in which the Commission seeks an injunction against an employer on a basis *independent* of FEPA.

20. Of course, a circuit court may entertain the issue of whether an employer violated § 16(f) when the issue comes to it by way of judicial review of the agency's decision. In addition, as we have noted, the Commission is statutorily authorized to pursue a request for a temporary injunction, pursuant to Article 49B, § 4.

FEPA does not establish private cause of action). *See also Makovi v. Sherwin–Williams Co.*, 316 Md. 603, 561 A.2d 179 (1989) (wrongful discharge suit for pregnancy discrimination not permitted when FEPA provided a remedy). There are no provisions in FEPA that authorize direct civil lawsuits, either by aggrieved individuals or the Commission, for claims of employment discrimination prohibited by § 16. Instead, the complainant must file a FEPA claim with the Commission and pursue the administrative remedies that we discussed earlier. *Crawford, supra*, 307 Md. at 25 n. 10, 511 A.2d 1079. *But see Molesworth v. Brandon*, 341 Md. 621, 672 A.2d 608 (1996) (when employer is not subject to FEPA enforcement procedures because it has too few employees, claimant may file common law wrongful discharge claim for discriminatory firing). Moreover, the *Crawford* Court specifically stated that a person charging discrimination may not "bypass the Human Relations Commission's procedures by . . . invoking the general equity power of a court." *Id.*, 307 Md. at 31 n. 14, 511 A.2d 1079.

Notably, Article 49B contains provisions authorizing civil remedies for other types of discrimination. *See* § 5(g) (Commission authorized to seek an order assessing a civil penalty against a party engaging in discrimination in public accommodations); § 8(b) (civil penalty for discrimination by business with respect to "accommodations, advantages, facilities, privileges, sales, or services"); § 32 (civil action by Commission upon "probable cause to believe" that housing discrimination is being committed); § 33 (civil action by victim of housing discrimination); § 34 (civil action by Commission against "pattern or practice of resistance" to the rights granted by the housing discrimination subtitle); § 42 (authorizing civil actions for violations of county anti-discrimination laws). In addition, Article 49B, § 4 only authorizes the Commission to seek a "temporary injunction" if it "believes that appropriate civil action is necessary to preserve the status of the parties or to prevent irreparable harm *from the time the complaint is filed until the time of its final disposition.*" (Emphasis supplied). But nothing in FEPA or the interpretive case law entitles the

claimant or the Commission to file either a lawsuit or an action for an injunction in circuit court, seeking a remedy for a violation of the Act.

The Commission cites two federal cases in which the EEOC sought to enjoin an employer's suit that allegedly violated the federal analogue to § 16(f), § 704(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a). But Title VII contains a specific provision authorizing the EEOC to file civil actions in federal court on behalf of complainants. *See* 42 U.S.C. § 2000e–5(f). There is no such provision in FEPA. FEPA contains an investigation and enforcement scheme that is quite similar to the procedure established by § 10 of the National Labor Relations Act, *see* 29 U.S.C. § 160, involving charges filed by aggrieved parties, administrative investigations, hearings before hearing examiners, administrative review by the Commission itself, and judicial review in the courts. Direct civil actions filed in circuit court are not part of this process.

We conclude that the circuit court is not the proper forum for the Commission to obtain, in the first instance, a determination that an employer has violated § 16(f) and a permanent injunction on the basis of such a determination. Rather, the enforcement mechanism created by Article 49B, §§ 9A, 10, 11, and 12 is the exclusive process by which an employer may be found to have violated the provisions of FEPA, including § 16(f); the Commission may not evade this statutorily mandated procedure. If Downey is to be adjudged to have violated § 16(f) by virtue of its lawsuit, it must be through this process.[21] When appropriate, the Commission may issue a "cease-and-desist order," pursuant to § 11(e), which may be considered by the circuit court through judicial review. Our conclusion is not inconsistent with the right to obtain a tempo-

---

21. The parties have not advised us, and the record does not reveal, whether Walters has filed a charge with the Commission alleging that Downey's conduct violated § 16(f), or whether the Commission has issued such a charge on its own initiative, as permitted under certain circumstances by § 9A(b).

rary injunction, pending final disposition, which is specifically authorized by § 4.

## SUMMARY

The circuit court's order denying the Commission's request for an *ex parte* injunction is affirmed. On remand, if the court determines that a claim in Downey's Virginia lawsuit involves substantially the same issues that are under investigation by the agency, or that equity requires staying the lawsuit, then it should enjoin Downey from pursuing that suit until the agency has finally disposed of Walters's claim. But the presence of an ongoing agency investigation does not necessarily prevent Downey from pursuing independent claims against Walters, even if there happens to be some factual overlap between the discrimination claim and the independent claim. Finally, the Commission is not entitled to an injunction preventing Downey permanently from prosecuting its lawsuit, on the grounds that the suit violates Article 49B, § 16(f).

**ORDER DENYING EX PARTE INJUNCTION AFFIRMED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY APPELLEE.**